**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HERAND ABCARIAN, M.D., F.A.C.S., Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TIMOTHY MCDONALD, M.D., J.D., PATRICIA | ) Case No. 08 CV 3843 |
| KALE, WILLIAM H. CHAMBERLIN, JR., M.D., | ) |
| NIKKI CENTOMANI, STUART ALLEN, | ) Honorable Samuel Der-Yeghiayan |
| BARBARA MCCOLGIN, CHRIS J. MOLLET, ESQ., | ) |
| THOMAS R. BEARROWS, ESQ., CHRISTINE | ) |
| FLANINGAM, MICHAEL TRUCCO, ESQ., and | ) |
| THE BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF ILLINOIS, Defendants. | ) |

**MEMORANDUM IN SUPPORT OF THE
U OF I DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Defendants Timothy McDonald, Patricia Kale, William Chamberlin, Nikki Centomani, Stuart Allen, Barbara McColgin, Chris Mollet, Thomas Bearrows, Christine Flaningam, and the Board of Trustees of the University of Illinois (collectively, the "U of I Defendants") submit this Memorandum in Support of Their Motion to Dismiss Plaintiff Herand Abcarian's Complaint.

**<u>INTRODUCTION</u>**

Plaintiff Herand Abcarian's 47-page, 165-paragraph Complaint against the Board of Trustees of the University of Illinois, various University employees, and its outside counsel arises from the Board's settlement of a wrongful death/medical malpractice claim against Abcarian and subsequent reporting of that settlement to state and federal regulatory authorities. Abcarian, a colorectal surgeon at the University of Illinois Medical Center at Chicago ("UIMCC"), contends that the Board lacked the authority to settle the claim without his consent and that the Board should not have reported the settlement to the National Practitioners Data Bank ("NPDB") and the Illinois Department of Financial and Professional Regulation ("IDFPR"), the organizations charged by federal and state mandates with collecting information

on medical malpractice claims and settlements.  At the very most, the factual allegations suggest

the possibility that the Defendants may have breached the University of Illinois Liability Self-

Insurance Plan (attached as Exhibit E to the Complaint) which governs issues of settlement and

consent for University employees—hardly a matter for a federal civil rights suit.  Nonetheless,

Abcarian tries to bring this case within the jurisdiction of the federal courts by alleging a litany

of purported constitutional violations as well as state law claims.

    For the reasons set forth below, Abcarian's claims should be dismissed.  Abcarian's

federal and state claims against the Board of Trustees are barred by the Eleventh Amendment.

Abcarian's federal claims against the Individual U of I Defendants fail to state a claim upon

which relief can be granted.  Assuming this Court agrees and dismisses Abcarian's federal

claims, this Court should further decline to exercise supplemental jurisdiction over and dismiss

Abcarian's remaining state law claims against the Individual U of I Defendants.

## <u>ALLEGATIONS OF THE COMPLAINT</u>[1]

    Abcarian has been a member of the medical staff of the UIMCC since 1972, and Head of

the Department of Surgery for the UIMCC at all times relevant to this suit.  Compl. ¶ 3.  As a

clinical department head, Abcarian was also a member of the Board of Directors of the College

of Medicine's Medical Service Plan ("MSP Board"), in which capacity he participated in

decisions of the MSP Board regarding fees charged for physician services, expenses payable

from such fees, and development of health care delivery systems.  *Id.* ¶¶ 23, 26.  Abcarian

alleges that during MSP Board meetings, he expressed his opposition to increased premiums for

physicians' professional liability coverage and his concerns regarding risk management and

---

[1]  For purposes of this motion to dismiss, the factual allegations of Abcarian's complaint are taken as true.  The Court, however, is not required to accept as true legal conclusions or unsupported conclusions of fact.  *See County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006).

safety issues, faculty recruitment, compensation, and fringe benefits, oftentimes in heated confrontations with Defendants Kale, McDonald, and Chamberlin. *Id.* ¶¶ 26-32.

In July 2005 Abcarian received a letter about a potential wrongful death claim from the attorney for the family of John Behzad, Abcarian's former patient at UIMCC, and Abcarian forwarded the letter to Defendant Chamberlin, the Chief Medical Officer at UIMCC. *Id.* ¶¶ 33, 35. The Complaint alleges that Defendant Chamberlin then conspired with the other Defendants to settle the Behzad claim so that the settlement could be reported to the IDFPR and the NPDB for the purpose of damaging Abcarian's professional reputation and discrediting, embarrassing, and humiliating him. *Id.* ¶ 37. Abcarian alleges that the conspiracy was motivated by a desire to retaliate against him for voicing his opinions as a member of the MSP Board. *Id.* ¶ 33.

After the U of I Defendants recommended and agreed to settle the Behzad claim for $950,000, a Release and Indemnity Agreement was signed on June 13, 2006. *Id.* ¶¶ 44, 45 & Ex. C. Abcarian alleges that on the same day, despite "a complete resolution of all claims of medical negligence," one of the Defendants directed the attorney for the Behzad Estate to file a medical malpractice action against Abcarian in the Circuit Court of Cook County but not to serve Abcarian with notice of the lawsuit or settlement. *Id.* ¶¶ 47, 49-51. Abcarian further alleges that on July 6, 2006, at the direction of one or more Defendants, the Behzad attorney obtained a court order approving the settlement and dismissing the malpractice case with prejudice. *Id.* ¶ 51.

Abcarian claims that in July and August 2006 several Defendants, including Chamberlin, McDonald, Bearrows, Kale, and Flaningam, reported the settlement to the NPDB and the IDFPR although, according to Abcarian, the underlying medical negligence case was not meritorious and he never consented to the settlement. *Id.* ¶ 60-66. He also contends that it is the custom and practice of the Board of Trustees and UIMCC not to report the settlement of malpractice claims against University physicians, and that the settlement of the Behzad claim "is the only occasion

when the Board of Trustees of the University of Illinois has reported the alleged settlement of a claim of medical negligence" to the IDFPR and the NPDB. *Id.* ¶¶ 66, 69. Abcarian contends that by reporting the Behzad settlement, Defendants treated him differently than another physician whose settlement of a medical malpractice claim was not reported. *Id.* ¶¶ 54-60.

In August 2006 Abcarian received letters from the NPDB and the IDFPR, advising him of the Behzad medical malpractice action and settlement. *Id.* ¶¶ 70, 73. After receiving the letters, Abcarian retained an attorney to investigate and to file a Petition to Vacate the Circuit Court's July 6, 2006 order approving the settlement and dismissing the medical malpractice action. *Id.* ¶¶ 74-84. Abcarian claims that in October 2006 his counsel made a demand on Defendant Mollet and the Board of Trustees "to correct the record in the Circuit Court of Cook County" and "to rectify" the reports to the NPDB and the IDFPR. *Id.* ¶ 83. After Abcarian filed his petition to vacate, Defendant Bearrows engaged the legal services of Defendant Trucco to oppose Abcarian's attempts to reopen the medical malpractice action. *Id.* ¶¶ 85, 88, 92. In February 2007 Abcarian contends that he repeated his demand that Defendants withdraw the reports submitted to the NPDB and the IDFPR, but Defendants did not do so. *Id.* ¶¶ 86, 87.

In April 2007 the Circuit Court of Cook County granted Abcarian's petition to vacate the July 2006 order to the extent that it dismissed the Behzad case with prejudice. *Id.* ¶ 93. Counsel for the Behzad Estate then immediately moved to voluntarily dismiss the case with prejudice, which the court granted, thereby leaving "no possibility of an adverse judgment ever being entered against Dr. Abcarian." *Id.* Abcarian subsequently requested that Defendants Flaningam and Kale notify the NPDB and the IDFPR that the reports regarding the settlement of the Behzad case were erroneous because there was no settlement, but Defendants again did not withdraw or amend the reports. *Id.* ¶¶ 94-101. As a result of Defendants' actions, Abcarian claims to have suffered "acute mental distress" and "embarrassment and humiliation," *id.* ¶¶ 77, 97, and alleges

that he incurred substantial legal expenses in an attempt to repair his damaged reputation, *id*.

¶¶ 100, 103.  He seeks damages for the injury to his reputation, for the economic losses flowing

from this reputational harm (including attorney fees), and for emotional pain and suffering.

## ARGUMENT

**I.    Abcarian's Claims Against the Board Are Barred by the Eleventh Amendment.**

Abcarian names as a defendant the Board of Trustees of the University of Illinois, which

according to the Complaint is a "public corporation sued in its official capacity."  Compl. ¶ 4.

Abcarian's federal and state claims against the Board should be dismissed because they are

barred by the Eleventh Amendment.

The Eleventh Amendment bars suits against states and "arms of the state" in federal

court.  *Thiel v. State Bar of Wis.*, 94 F.3d 399, 400 (7th Cir. 1996).  There can be no dispute, in

light of Seventh Circuit caselaw, that the Board of Trustees of the University of Illinois is an arm

of the state for Eleventh Amendment purposes.  *Goshtasby v. Bd. of Trs. of Univ. of Ill.*, 123 F.3d

427, 427 (7th Cir. 1997); *Kaimowitz v. Bd. of Trs. of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir.

1991); *Pollak v. Bd. of Trs. of Univ. of Ill.*, No. 99 C 710, 2004 WL 1470028, at *1 (N.D. Ill.

June 30, 2004) (unpublished).[2]

There are three limited exceptions to Eleventh Amendment immunity: (1) a state can

waive immunity by consenting to suit in federal court; (2) Congress can abrogate a state's

immunity; and (3) a plaintiff may pursue prospective relief against state officials for ongoing

violations of federal law under the exception recognized in *Ex Parte Young*.  *See Peirick v. Ind.*

*Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007).  None of

---

[2]  Copies of the two unpublished orders cited in this Memorandum are attached as Exhibit A.

those exceptions apply here.  The Board has not waived its immunity,[3] and Congress has not abrogated the state's immunity in any of the federal statutes on which Abcarian relies.  *See, e.g.*, *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 909 (7th Cir. 1991) (no abrogation under § 1983); *Neuman v. United States*, No. 07 CV 0362, 2008 WL 3285761, at *4-5 (S.D. Ill. Aug. 7, 2008) (unpublished) (no abrogation under §§ 1983, 1985, 1986); *Walker v. Bd. of Regents of Univ. of Wis.*, 300 F. Supp. 2d 836, 849 (W.D. Wis. 2004) (no abrogation under §§ 1981, 1983).[4] Moreover, although Abcarian alleges in his Complaint that he is seeking prospective relief for ongoing violations of federal law, the *Ex Parte Young* doctrine applies only to individual state employees; it does not apply to arms of the state like the Board of Trustees.  *Peirick*, 510 F.3d at 696-97.  Thus, all of Abcarian's claims as to the Board are barred by the Eleventh Amendment.

## II.    The Complaint Fails to State Any Federal Claim Against the Individual U of I Defendants.

Under Rule 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted.  To survive a motion to dismiss, a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This language has been interpreted to mean that a plaintiff must clear two hurdles: (1) the complaint must describe the claim in sufficient detail to give the defendant "fair notice" of what the claim is and the grounds upon which it rests; and (2) the allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  In view of these

---

[3]  With respect to Abcarian's tort claims in particular, Illinois law states that the Illinois Court of Claims has exclusive jurisdiction over tort claims against the Board of Trustees.  *See* 705 ILCS 505/8(d).  Thus, Abcarian's tort claims against the Board must be brought in the Illinois Court of Claims, not federal court.

[4]  Although the Court need not reach this issue, the Board further notes that Abcarian's § 1983 claims fail for the additional reason that the Board, as an arm of the state, is not a "person" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kaimowitz*, 951 F.2d at 767.

standards and for the reasons set forth below, Abcarian's federal claims against the Individual U of I Defendants should be dismissed for failure to state any federal claim.

### A.    Counts I Through III Fail to State Any Claims Under 42 U.S.C. § 1983.

In Counts I through III Abcarian alleges that Defendants are liable under 42 U.S.C. § 1983 for various violations of his constitutional rights, specifically the First Amendment right to free speech and the Fifth Amendment right to due process (Count I), the "Eighth Amendment right to a trial by jury" (Count II), and the Fifth Amendment right to equal protection (Count III). To state a claim under § 1983, a plaintiff must allege that the defendant acted under color of state law and deprived the plaintiff of privileges or immunities secured by the Constitution or laws of the United States. *Strasburger v. Bd. of Ed., Hardin County Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 355 (7th Cir. 1998). As set forth below, the allegations of Counts I through III fail to state a claim under § 1983 and therefore should be dismissed.

### 1.    Count I Fails to State a First Amendment or Due Process Claim.

Count I of the Complaint, thought styled as a single count, actually combines three distinct claims for relief: a First Amendment retaliation claim; a Fifth Amendment substantive due process claim; and a Fifth Amendment procedural due process claim. Under any of these theories, Count I fails to state a claim.

### a.    Count I Fails to State a First Amendment Retaliation Claim.

In Count I Abcarian alleges that he has a First Amendment right and a "duty pursuant to the terms of his membership on the Board of Directors of the Medical Service Plan" to free speech on matters of public concern. Compl. ¶ 106. Abcarian defines these matters of public concern as including liability coverage for physicians, risk management, patient safety, physician discipline, and management's obstruction of the implementation of numerous "needed changes" concerning medical malpractice insurance premiums and reserves. *Id.* Abcarian further alleges

that Defendants engaged in the retaliatory acts alleged in the Complaint because of his "exercise of his duty to speak on matters of public concern as required of him in the exercise of his office as a member of the Executive Committee of the Medical Service Plan." *Id.* ¶ 120.

For a public employee's speech to qualify for First Amendment protection, he must have been speaking as a *citizen* on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006); *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). Where a public employee makes statements "pursuant to [his] official duties," however, the employee is not speaking as a citizen and such statements are not protected by the First Amendment. *Garcetti*, 547 U.S. at 421.

Here, Abcarian's own allegations defeat his claim. Abcarian alleges that (1) he was a public employee at the time of the allegedly protected speech and when the alleged retaliation occurred, Compl. ¶ 3; (2) as a member of the MSP Board, he had a duty to speak on matters of public concern, *id.* ¶¶ 24, 26; and (3) he spoke on matters of public concern in the "discharge of his responsibilities to the Medical Service Plan," *id.* ¶¶ 28-32. Because Abcarian's retaliation claim is based on speech that was made in the discharge of his official duties, his First Amendment claim should be dismissed. *See Garcetti*, 547 U.S. at 421; *Tamayo v. Blagojevich*, 526 F.3d 1074, 1092 (7th Cir. 2008) (affirming dismissal of First Amendment claims of public employee whose "speech" was made pursuant to official duties); *Battle v. Bd. of Regents for State of Ga.*, 468 F.3d 755, 761-62 (11th Cir. 2006) (University employee's speech not entitled to First Amendment protection because speech made in the course of fulfilling job responsibilities); *Hong v. Grant*, 516 F. Supp. 2d 1158, 1168-69 (C.D. Cal. 2007) (rejecting retaliation claim where speech made pursuant to official duties as a faculty member), *appeal docketed*, No. 07-56705 (9th Cir. Nov. 23, 2007).

### b.    Count I Fails to State a Procedural Due Process Claim.

In Count I Abcarian separately alleges that Defendants violated his "Fifth Amendment" right to notice and an opportunity to be heard in connection with "claims made against him for medical negligence." Compl. ¶¶ 109-111. As an initial matter, Abcarian misidentifies the Fifth Amendment as the source of his procedural due process rights. Because the Fifth Amendment applies only to actions of the federal government, not the state, Abcarian's Complaint fails to state a Fifth Amendment claim. *See Jackson v. Byrne*, 738 F.2d 1443, 1446 (7th Cir. 1984).

Even if this Court construes Abcarian's claim as asserting a right to procedural due process under the *Fourteenth* Amendment, which provides that no *State* shall "deprive any person of life, liberty or property without due process of law," Abcarian's Complaint still fails to state a claim. To state a procedural due process claim, a plaintiff must allege that (1) he "suffered a deprivation of a cognizable property or liberty interest" and (2) "any such deprivation occurred without due process." *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003).

Abcarian alleges that Defendants' failure to provide him with notice and an opportunity to be heard in connection with the Behzad claim resulted in a deprivation of a "liberty interest and a property interest in his good name and reputation under the Fifth Amendment." Compl. ¶ 115. He also alleges that Defendants' actions deprived him of "his liberty interest in his . . . right to be free from unwarranted intrusions upon his mental status." *Id.* ¶ 116. These allegations, however, are insufficient to allege an actionable deprivation of a cognizable property or liberty interest. "Reputation" is not "property" or "liberty" within the meaning of the due process clause. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (reputation is not "liberty"); *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987) (reputation is not "property" or "liberty"). Moreover, Abcarian does not have a constitutional due process right to be free from the infliction of emotional harm. *Brainerd v. Potratz*, 421 F. Supp. 836, 840 (N.D. Ill. 1976). At best,

Abcarian alleges violations of state tort law, but § 1983 provides no remedy for such violations. *See Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Paul v. Davis*, 424 U.S. 693, 700-01 (1976).

Even if Abcarian could properly allege that he was deprived of a recognized property or liberty interest, his claim would still fail because he cannot demonstrate that the deprivation occurred without due process of law. As the Complaint concedes, Abcarian had an adequate remedy under state law and he availed himself of that remedy when he filed a petition under 735 ILCS 2-1401 to vacate the Circuit Court's order dismissing the medical malpractice action. Compl. ¶ 80. Moreover, the state law remedy proved adequate when the Circuit Court vacated its order dismissing the case with prejudice. *Id.* ¶ 93. Because the Complaint reflects that state law provided an adequate remedy, Abcarian fails to state a procedural due process claim. *See Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002).

**c.    Count I Fails to State a Substantive Due Process Claim.**

In Count I Abcarian also alleges that Defendants engaged in retaliatory acts that denied him "fundamental substantive Due Process rights to bodily integrity" in violation of the "Fifth Amendment." Compl. ¶ 114. The alleged assault to Abcarian's "bodily integrity" is identified as Defendants' "intentional infliction of acute emotional distress by falsely reporting settlement of a medical negligence case" to state regulators. *Id.* ¶ 112. Abcarian further alleges that the false accusations of medical malpractice were a "state created danger" that imposed a duty on the state to protect him from harm. *Id.* ¶ 115. Again, Abcarian's allegations fail as a matter of law.

Abcarian again mistakenly identifies the Fifth Amendment as the source of his substantive due process rights. Because the Fifth Amendment does not apply to the states, Abcarian fails to state a substantive due process claim. *See Jackson*, 738 F.2d at 1446. More importantly, even if Abcarian intended to invoke the Fourteenth Amendment, his Complaint still fails to state a claim. Abcarian has alleged nothing more than a claim for intentional infliction of

emotional distress, and § 1983 affords no relief for violations of state law. *Baker*, 443 U.S. at 146; *Rowe*, 17 F.3d at 1051. While courts have recognized a due process claim based on the deprivation of the right to "bodily integrity," *see, e.g.*, *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994), those cases are extremely limited and involve outrageous, physical conduct. *Wudtke v. Davel*, 128 F.3d 1057, 1063 (7th Cir. 1997) (allegations that defendant forcibly touched plaintiff, coerced her into oral sex, and threatened adverse employment action stated claim for violation of right to bodily integrity); *Bennett v. Pippin*, 74 F.3d 578, 589 (5th Cir. 1996) (sheriff's rape of murder suspect violated right to bodily integrity). Because Abcarian's allegations involve no such conduct, his claim cannot withstand a motion to dismiss.

Abcarian also alleges that the "falsely filed lawsuit" was a "state created danger" that made him vulnerable to emotional distress, damaged his reputation, and forced him to incur legal expenses. Compl. ¶ 115. At most, Abcarian has alleged a state law tort claim for which § 1983 affords him no remedy. *Baker*, 443 U.S. at 146; *Rowe*, 17 F.3d at 1051. While courts have recognized that the substantive due process clause protects individuals against dangers that the state itself created under the state-created danger doctrine, *see King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 817-18 (7th Cir. 2007), that doctrine applies only to cases involving egregious circumstances, where the "danger" created is life-threatening in nature. *See, e.g.*, *Monfils v. Taylor*, 165 F.3d 511, 519-20 (7th Cir. 1998) (upholding verdict against police officer who allowed informant's tape to be released despite his knowledge that release would result in heightened danger to informant, who was ultimately killed); *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993) (state-created danger exists when police removed sober driver and left behind drunk passengers with keys to car). No comparable circumstances exist here. Accordingly, Abcarian's Complaint fails to state a due process claim.

2.      **Count II Fails to State a Claim for Violation of Abcarian's "Eighth Amendment" Right to a Jury Trial.**

In Count II Abcarian alleges that his "Eighth Amendment" right to a jury trial was violated when the Defendants concealed the existence of a medical malpractice action that they settled and dismissed without his knowledge. Compl. ¶¶ 123, 126. Abcarian fails to state a claim because the Eighth Amendment prohibits "excessive bail" and "cruel and unusual punishment," and does not address the right to a jury trial. However, even if Abcarian meant to rely on the Seventh Amendment right to a jury trial, his Complaint still fails to state a claim. The Seventh Amendment right to a jury trial applies only to civil cases in federal court; it does not apply to civil cases in state court. *See Wartman v. Branch 7, Civil Div., County Court, Milwaukee County, Wis.*, 510 F.2d 130, 134 (7th Cir. 1975). Accordingly, Count II should be dismissed.

3.      **Count III Fails to State an Equal Protection Claim.**

In Count III Abcarian alleges that Defendants violated his right to Equal Protection because they allegedly reported the settlement of the Behzad claim but did not report the settlement of a medical malpractice action against another UIMCC physician.

To state an equal protection claim, a plaintiff must allege that he has suffered disparate treatment based on his membership in a *protected class*, such as race, gender, or religion. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). Here, Abcarian does not allege that the disparate treatment he suffered was the result of his membership in a protected class. Moreover, to the extent that Abcarian's claim is based on the theory that he was intentionally treated differently than others and that there is no rational basis for the difference in treatment—the so-called "class-of-one" theory—his Complaint fails to state a claim because that theory does not apply to

public employees like Abcarian.  *Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2156 (2008).

Accordingly, Count III fails to state an equal protection claim.

**B.     Count IV Fails to State a Claim Under 42 U.S.C. § 1986.**

Count IV of Abcarian's Complaint is based on 42 U.S.C. § 1986.  Abcarian alleges that

he has a right to be free from violations of his rights under the "First, Fifth, Eighth, and

Fourteenth Amendments," and that Defendants violated his rights by "refusing to act to prevent

violations of his rights" and by refusing to correct "the false reports" filed with the NPDB and

IDFPR.

Liability under § 1986 is derivative of liability under § 1985, and if a plaintiff fails to

allege facts sufficient to state a claim under § 1985, his § 1986 claim must be dismissed.  *See*

*Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985).  While Abcarian makes no mention of

§ 1985 in his Complaint, his wide-ranging allegations of conspiracy arguably come closest to

sounding a claim under § 1985(3), which imposes civil liability against persons who conspire to

deprive another person of the equal protection of the law.  However, to state a claim under

§ 1985(3), a plaintiff must allege "racially-motivated discriminatory animus behind defendants'

conduct."  *Bowman v. City of Franklin*, 980 F.2d 1104, 1109 (7th Cir. 1992); *Grimes*, 776 F.2d

at 1366.  Here, Abcarian does not allege that the purported conspiracy was motivated by racially

discriminatory animus, and a conspiracy that is not based on racial bias is beyond the scope of

§ 1985(3).  Because Abcarian fails to state a claim under § 1985, he has no derivative claim

under § 1986.  Accordingly, Count IV of the Complaint should be dismissed.

**C.     Count V Fails to State a Claim Under 42 U.S.C. § 1981.**

In Count V Abcarian alleges that under the University's self-insurance plan, he had the

right to consent to any settlement and the right to conflict-free counsel, and that he was treated

differently than "other physicians who are staff members at UIMCC" who were afforded "the

right to refuse to consent to the settlements of claims against them" and were provided with "independent counsel." These allegations fail to state a § 1981 claim.

Section 1981 provides a cause of action for race or national origin discrimination in the employment context, and to state a claim under § 1981, a plaintiff must allege that the defendant intentionally discriminated against him on the basis of his *race* or *national origin*. *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 759 (7th Cir. 2006); *Abdullahi v. Prada USA Corp.*, 520 F.3d 710, 712 (7th Cir. 2008). Abcarian, however, does not allege that the purported disparate treatment he received was based on his race or national origin. Accordingly, Count V fails to state a § 1981 claim and should be dismissed.

> **D.    Because Abcarian Fails to State Due Process and Equal Protection Claims, Count VI For Equitable and Other Relief Should Be Dismissed.**

Count VI incorporates the allegations in Counts I through V of the Complaint and requests equitable and other relief for Defendants' allegedly continuing violations of Abcarian's right to due process and equal protection, but alleges no additional facts in support of the claims and fails to assert any new cause of action for which relief can be granted. Compl. ¶ 147. Because Counts I through V of the Complaint fail to state a claim for violations of due process and equal protection, Count VI should also be dismissed.

**III.    This Court Should Decline to Exercise Supplemental Jurisdiction over Abcarian's Remaining State Law Claims Against the Individual U of I Defendants.**

As set forth above, Abcarian's federal claims as to the Individual U of I Defendants should be dismissed for failure to state a claim upon which relief can be granted. As for the remaining state law claims against the Individual U of I Defendants, there exists no independent basis for jurisdiction. In cases where all federal claims are dismissed before trial, the usual practice in the Seventh Circuit is to decline to exercise supplemental jurisdiction over the state

law claims.[5]  28 U.S.C. § 1367(c)(3); *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 615 (7th

Cir. 2007).  This Court should follow that practice.

<u>CONCLUSION</u>

For the foregoing reasons, the U of I Defendants respectfully request that this Court

(1) dismiss Abcarian's federal and state claims against the Board as barred by the Eleventh

Amendment; (2) dismiss Abcarian's federal claims against the Individual U of I Defendants for

failure to state a claim; and (3) decline to exercise supplemental jurisdiction over and dismiss

Abcarian's state law claims against the Individual U of I Defendants.

Dated:  September 5, 2008                              Respectfully submitted,

**Defendants Timothy McDonald, M.D., J.D.,
Patricia Kale, William H. Chamberlin, Jr.,
M.D., Nikki Centomani, Stuart Allen,
Barbara McColgin, Chris J. Mollet, Esq.,
Thomas R. Bearrows, Esq., Christine
Flaningam, and the Board of Trustees of the
University of Illinois**

By:   <u>    s/ William D. Heinz       </u>
              One of their attorneys

William D. Heinz
Richard P. Steinken
Monica R. Pinciak-Madden
Jenner & Block LLP
330 North Wabash
Chicago, Illinois 60611
312-222-9350

---

[5]  In the event this Court decides to retain jurisdiction over the state law claims, Defendants request that this Court provide them with the opportunity to answer or otherwise respond to those claims.

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2004 WL 1470028 (N.D.Ill.)

**C**

Pollak v. Board of Trustees of University of Illinois

N.D.Ill.,2004.

Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois, Eastern Division.

Raymond POLLAK, M.D., Plaintiff,

v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, et al., Defendants.

**No. 99 C 710.**

June 30, 2004.

Robin B. Potter, Robin Potter & Associates, P.C., AUSA, United States Attorney's Office, Patrick James Keenan, Timothy David Nimrod, Attorney General's Office, Chicago, IL, Laurie J. Wasserman, Law Offices of Laurie J. Wasserman, Skokie, Il, Ronald E. Osman, Ronald E. Osman & Associates, Marion, IL, for Plaintiff.

William Denby Heinz, Jerold Sherwin Solovy, Lise Taylor Spacapan, Robert R. Stauffer, Jenner & Block, LLC, Patrick Sean Coffey, Jamie Marie Haberichter, Gardner Carton & Douglas LLP, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

LEINENWEBER, J.

*1 Plaintiff Raymond Pollak, M.D. (hereinafter, "Pollak") filed both qui tam and individual claims against Defendants Board of Trustees of the University of Illinois (hereinafter, the "BOT") and several of his former supervisors (hereinafter, the "Individual Defendants") under the federal False Claims Act (the "FCA"), 31 U.S.C. § 3729 and the Illinois Whistleblower Recovery and Protection Act (the "IWRPA"), 740 ILCS 175/4. The United States and the State of Illinois intervened in the qui tam actions, and settled these claims against the BOT, leaving only Pollak's private claims for retaliation outstanding. These claims are based on 31 U.S.C. § 3730(h) and 740 ILCS 175/4(g), respectively. The BOT and the Individual Defendants have each moved to dismiss the remainder of Pollak's case in its entirety on Eleventh Amendment grounds.

I. *STANDARD OF REVIEW*

Federal Rule of Civil Procedure 8(a)(2) requires that "[a] pleading which sets forth a claim for relief, ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has properly stated a claim upon which relief could be granted, not whether the plaintiff will ultimately prevail on the merits. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In ruling on a motion to dismiss, a court must construe all well-pleaded allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.* A motion to

dismiss will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## II. *DISCUSSION*

### A. Claims against the BOT

By suing the BOT, Pollak has invoked serious Eleventh Amendment concerns. The Eleventh Amendment protects states and "arms of the states" from suit in federal court absent their consent or Congress' explicit decision to confer jurisdiction. Benning v. Board of Regents, 928 F.2d 775, 777 (7th Cir.1991).

In Cannon v. University of Health Sciences/Chicago Medical School, 710 F.2d 351 (7th Cir.1983) the Seventh Circuit held that the BOT qualified as an "arm of the state" for Eleventh Amendment purposes, barring a suit against it in federal court. Canon has been consistently upheld by numerous decisions within the Seventh Circuit and its subservient district courts. See Kaimowitz v. Bd. of Trustees of the University of Illinois, 951 F.2d 765, 767 (7th Cir.1991); Goshtashby v. Bd. of Trustees of the University of Illinois, 123 F.3d 427 (7th Cir.1997); McMiller v. Bd. of Trustees of the Univ. of Illinois, 275 F.Supp.2d 974, 979 (N.D.Ill.2003). Similarly, state courts within Illinois have also held that the BOT qualifies as an arm of the state for sovereign immunity purposes. See Ellis v. Board of Governors of State Colleges & Universities, 102 Ill.2d 387, 393, 80 Ill.Dec. 750, 466 N.E.2d 202 (1984).

**\*2** Pollak hopes to overcome this precedential case law by asking the Court to revisit the reasoning underpinning Canon. Pollak argues that, although the BOT qualified as an arm of the state circa Canon in 1984, it does not necessarily follow that it remains an arm of the state in perpetuity. To support this argument, Pollak notes that the State of Illinois now contributes a significantly smaller portion of the BOT's budget than it did in 1984. Additionally, Pollak points out that some of our sister courts have rejected claims that state universities qualify as arms of the state when the state at issue contributed a significantly higher share of the university budget than Illinois does here. See Kovats v. Rutgers, 822 F.2d 1303 (3rd Cir.1987); Honadle v. University of Vermont, 115 F.Supp.2d 468 (D.Vt.2000). Accordingly, Pollak urges the Court to conduct a "fact intensive inquiry" to determine whether or not the BOT still qualifies as an arm of the state, and not blindly follow Canon and its progeny.

Pollak makes a cogent point that the designation of an agency or organization as an arm of the state is not immutable. Certainly, the Court can envision circumstances in which an agency so designated would lose its sovereign immunity protection upon acquiring significant autonomy from the State or ceasing to depend on the State for financial support. In the most obvious example, if a State totally privatizes a once public college or hospital, the newly private body would indisputably lose its privileged status.

That being said, in the absence of such a clear change of status here, the Court does not believe it appropriate for the District Court to engage in Pollak's requested fact-intensive inquiry. The Court notes that it has received precedential guidance on this question from the Seventh Circuit as recently as 1997. In the intermediate time, Pollak has shown nothing so extreme as to warrant this Court from engaging in the judicial hubris of attempting to overrule

a higher authority. If Pollak wishes to reargue the BOT's status as an arm of the state, he may do so within the appropriate forum of the Seventh Circuit upon appeal. As of now, the Court finds that BOT still qualifies as an arm of the state under the Eleventh Amendment.

Pollak makes two other arguments that he believes permits his claims to survive. First, Pollak contends that the BOT waived its right to claim sovereign immunity when the State of Illinois intervened and settled the qui tam claims originally filed by Pollak. Alternatively, Pollak argues that the intervention of the United States in the qui tam action voided any claim that the BOT had to invoke sovereign immunity. These arguments are without merit. To begin with, although the United States and the State of Illinois intervened and settled the qui tam claims, they expressly declined to intervene (nor arguably, could they intervene) in the at-issue retaliation claims. Furthermore, the settlement agreement that resolved the qui tam claims provided that the BOT "expressly reserves any and all defenses to any and all remaining counts of the Civil Action."Ergo, the BOT specifically refused to waive its sovereign immunity defense and, in the settlement agreement, the United States and the State of Illinois consented to permit the BOT to retain these defenses.

**\*3** As a result, the Court finds that sovereign immunity protects the BOT from suit under both the FCA and the IWRPA.

### B. Claims against the Individual Defendants

In addition to the BOT, Pollak has sued the Individual Defendants in both their official and individual capacities. With respect to suing the Individual Defendants in their official capacities, Pollak runs afoul of the same Eleventh Amendment concerns that preclude him from maintaining a suit against the BOT. Therefore, for the same Eleventh Amendment reasons as discussed above, the Court dismisses Pollak's suit against the Individual Defendants in their official capacities.

With respect to his suit against the Individual Defendants in their individual capacities, Pollak does not face an Eleventh Amendment bar. Nevertheless, these claims also lack merit, as Pollak fails to establish that the FCA even authorizes him to file such a suit. The Court notes that, unlike other federal statutes, 31 U.S.C. § 3730(h) of the FCA imposes liability only upon "employers," not any person who could conceivably retaliate against a whistleblower. Although the Seventh Circuit has never addressed this issue, our sister courts have uniformly held that supervisors, such as the Individual Defendants, do not qualify as "employers" subject to liability under the FCA.See United States, ex rel. Golden v. Arkansas Game & Fish Commission, 333 F.3d 867, 871 (8th Cir.2003), cert. denied, --- U.S. ----, 124 S.Ct. 1069, 157 L.Ed.2d 894 (2004); United States, ex rel. Siewick v. Jamieson Science and Engineering, Inc., 322 F.3d 738, 740 (D.C.Cir.2003); United States, ex rel. Wilkins v. Ohio, 885 F.Supp. 1055 (S.D.Ohio 1995); United States, ex rel. McVey v. Bd. of Regents, 165 F.Supp.2d 1052, 1056 (N.D.Cal.2001). Pollak gives this Court no reason to doubt that the Seventh Circuit, should it ever address this issue, would reach a different conclusion than every other court that has ever considered it.

The Court therefore dismisses Pollak's FCA claims against the Individual Defendants. As a result of this dismissal, combined with the Court's dismissal of the FCA claims against the BOT, Pollak no longer has any federal claims

pending. This, in turn, prevents the Court from exercising supplemental jurisdiction over any IWRPA claims Pollak might have against the Individual Defendants (such claims against the BOT having been dismissed due to the BOT's sovereign immunity). Therefore, the Court also dismisses the IWRPA claims against the Individual Defendants.

## CONCLUSION

For the reasons stated herein, the Court finds Pollak's claims barred by precedent within the Seventh Circuit and the State of Illinois, and the Motions to Dismiss of the BOT and the Individual Defendants are GRANTED.

IT IS SO ORDERED.

N.D.Ill.,2004.
Pollak v. Board of Trustees of University of Illinois
Not Reported in F.Supp.2d, 2004 WL 1470028 (N.D.Ill.)

END OF DOCUMENT
© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy

Slip Copy, 2008 WL 3285761 (S.D.Ill.)

**H**

Neuman v. U.S.

S.D.Ill.,2008.

Only the Westlaw citation is currently available.

Page 1

United States District Court,S.D. Illinois.

James NEUMAN, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

**No. 07-CV-0362-MJR.**

Aug. 7, 2008.

James Neuman, Iowa City, IA, pro se.

James A. Lewis, Assistant U.S. Attorney, Terence Corrigan, Illinois Attorney General's Office, Springfield, IL, Sonni C. Williams, City of Peoria, Miranda Jeanne Floyd, Peoria, IL, for Defendants.

*MEMORANDUM AND ORDER*

REAGAN, District Judge.

*A. Introduction and Background*

**\*1** On March 14, 2007, Neuman filed suit in Illinois state court against a large number of defendants, including Karen McNaught, Judge Brian Nemenoff, the State of Illinois, and the Office of the Attorney General for the State of Illinois (Doc. 2). The case was removed to federal court in the Central District of Illinois on May 1, 2007. Because each of the federal defendants is employed in the Central District of Illinois, all judges in that district recused themselves, and the case was transferred to the Southern District of Illinois on May 17, 2007. The undersigned Judge was then randomly assigned to the case.

On June 8, 2007, Karen McNaught filed a motion to dismiss all claims against her under **FEDERAL RULE OF CIVIL PROCEDURE12(b)(6)** (Doc. 28). On September 14, 2007, Judge Nemenoff moved to dismiss Neuman's claims against him (Doc. 70). Finding that the complaint failed to set forth any fact that would permit this Court to infer that Neuman stated a plausible claim for relief against either, the Court dismissed McNaught and Judge Nemenoff without prejudice (Docs. 148 & 151).

Having received permission from the Court, Neuman filed an amended complaint in the above-captioned action on March 2, 2008 (Doc. 214). Therein, Neuman raises forty claims against approximately thirty defendants, including

McNaught, Judge Nemenoff, the State of Illinois, and the Office of the Attorney General.

These defendants now move this Court to dismiss Neuman's claims against them under **FEDERAL RULES OF CIVIL PROCEDURE12(b) (1) and 12(b)(6)** (Doc. 232). For the reasons stated below, the Court hereby **GRANTS** defendants' motion to dismiss.

### B. Analysis

*1. Neuman's Claims Against McNaught and Judge Nemenoff*

Dismissal is warranted under **Rule 12(b)(6)** if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."*Bell Atlantic Corp. v. Twombly*, --- U.S. ----, **127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)**; *EEOC v. Concentra Health Services, Inc.*, **496 F.3d 773, 776 (7th Cir.2007)**. In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in Plaintiff's favor. *St. John's United Church of Christ v. City of Chicago*, **502 F.3d 616, 625 (7th Cir.2007)**.

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief."This pleading standard requires that plaintiffs provide defendants with fair notice of their claim and the grounds upon which it rests. **See** *Swierkiewicz v. Sorema N.A.*, **534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)**. In *Bell Atlantic*, the Supreme Court explained:

> a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ....

**\*2** *Bell Atlantic*, **127 S.Ct. at 1964-65** (internal citations omitted). With respect to the plaintiff's allegation of conspiracy, the Court explained that Rule 8 requires a complaint to include "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement," and that failure to do so may result in dismissal. *Id.* at 1965.Ultimately, the Court upheld dismissal of the complaint because a showing of parallel conduct among telecommunications providers, without any other facts suggesting the existence of an illegal agreement, did not fulfill the requirements of Rule 8. *Id.* at 1974 ("**Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.**").

With respect to Neuman's first complaint, the Court previously dismissed both McNaught and Judge Nemenoff because Neuman failed to set forth any fact that would permit the Court to infer that there is a plausible claim for relief against either. The same is true of Neuman's amended complaint, as it relates essentially the same broad allegations without any factual support that could reveal evidence of a conspiracy involving either defendant.

Neuman's complaint alleges that he was denied entrance into the Peoria County Courthouse. Neuman alleges that he approached the courthouse to conduct work on a pending lawsuit (Doc. 214, p. 14). As he entered, Officer Terry

Short asked, "Where do you think you are going?"(Doc. 214, p. 14). Officer Short then accessed his radio and stated, "The guy that we have pictures of is attempting to enter the building."(Doc. 214, p. 15). At that point, Neuman alleges that he "knew immediately that they intended to deny [him] access to the courthouse" (Doc. 214, p. 17). Neuman then voluntarily left the building. He alleges that he did so because Officer Short's words and actions made him fear that he would be retaliated against, assaulted, and possibly killed (Doc. 214, p. 17). Neuman alleges that these facts indicate that security officers and others working in the courthouse, including McNaught and Judge Nemenoff, had entered into a conspiracy against him.

How Neuman makes this jump is not clear, as the complaint fails to allege any facts specific to McNaught or Judge Nemenoff. As far as the Court can tell, Judge Nemenoff's only relation to Neuman is that he was a defendant in one of the cases Neuman had filed, and McNaught's only relation to him is that she was defense counsel in one of Neuman's cases (See Docs. 233 & 252). There is absolutely nothing, however, to even remotely connect either to the alleged conspiracy to prevent Neuman from accessing the courthouse. Neither McNaught nor Judge Nemenoff were involved in the underlying facts-Officer Short is the only individual who had any actual contact with Neumann. The mere fact that Officer Short referred to Neuman on his radio to other officers does not support the allegation that McNaught or Judge Nemenoff were somehow involved in a conspiracy against him.

**\*3** Neuman's claims that Judge Nemenoff and McNaught knew of the alleged conspiracy, participated in it, and failed to stop it amount to pure speculation without factual support. The basis for these allegations, according to Neuman, is that "[t]here had to be a conspiracy against the plaintiff while his picture was being shown to the employees at the courthouse" (Doc. 252). However, he offers nothing to support his claim that McNaught and Judge Nemenoff were involved.

In response to the motion to dismiss, Neuman essentially argues that McNaught and Judge Nemenoff could have been involved in the alleged conspiracy, as he believes they wanted to hinder his ability to prosecute his pending lawsuits. Again, however, he offers no factual support for these assertions, and instead engages in leaps of logic that simply fail to state a claim upon which relief can be granted. For instance, Neuman argues:

I truly believe that Brian Nemenoff knew about the conspiracy and pictures of the plaintiff being used to immediately recognize the plaintiff. I believe that Karen McNaught may have knew about the conspiracy and pictures of the plaintiff being passed around to employees at the courthouse to immediately recognize the plaintiff so he could be retaliated against. The defendant's conspiracy, intimidation, retaliation, and obstruction of justice was meant to directly help Brian Nemenoff and his attorney Karen McNaught in the plaintiff['s] previous lawsuits.

As such, the allegations against McNaught are entirely speculative, conclusory, and without support. Even accepting as true all well-pled factual allegations and drawing all reasonable inferences in Plaintiff's favor, such broad assertions are not sufficient under the provisions of **Rule 8** and *Bell Atlantic.*Because the complaint fails to set forth enough facts to state a plausible claim to relief, the Court **GRANTS** defendant's motion to dismiss all claims against McNaught and Judge Nemenoff under **Rule 12(b)(6).**

*2. Neuman's Claims Against the State of Illinois and the Office of the Attorney General*

Neuman also alleges that the State of Illinois and the Office of the Attorney General are liable as the employers of various defendants. The defendants argue that Neuman's claims must be dismissed for a variety of reasons. First, they argue that Neuman bases his claims upon a variety of statutes that either do not provide for a private right of action or are wholly inapplicable to the case at hand. Where the cited statutes do permit a right of recovery, defendants argue that the state's sovereign immunity under the Eleventh Amendment bars Neuman's claims. Finally, defendants argue that they are not subject to suit under 42 U.S.C. §§ 1983, 1985, and 1986.

At the outset, the Court notes that Counts 30 through 38 do not state any claim whatsoever against the state defendants. The facts pled therein only refer to Neuman's claims against the federal defendants. As such, Neuman seeks no recovery against the state defendants in Counts 30 through 38.

**\*4** As for the rest of Neuman's complaint, it is essentially a repetition of the same facts under different headings in which Neuman alleges a right to recovery under various statutes. The vast majority of these statutes provide no private right of action. For instance, Neuman repeatedly cites Title 18 of the United States Code, which constitutes the federal criminal code. Neuman also repeatedly cites Chapter 720 of the Illinois Code, which provides Illinois's criminal statutes. No private right of action exists under any of these criminal laws.

Neuman also cites other federal laws, including various sections of Title 42 of the United States Code. Again, the vast majority of these statutes either have no application to the instant action, or they provide no private right of action. For instance, Neuman cites **42 U.S.C. § 2000b,** which permits the Attorney General to institute various civil actions on behalf of certain individuals. He also cites **42 U.S.C. § 1997d,** which prohibits retaliation against individuals who report conditions that may violate the rights of an institutionalized person. Additionally, Neuman cites **42 U.S.C. §§ 1887, 1981, 1982, 1987, 1989, 1990, 1991, 1995, and 2000d,** which either provide no private right of action, have no cognizable relevance whatsoever to this case, or both. Accordingly, Neuman's claims must be dismissed insofar as they rely on these statutes for relief under **Rule 12(b)(6).**

However, Neuman also relies on various federal statutes that do permit a private right of action. For instance, Neuman cites **42 U.S.C. §§ 1983, 1985, and 1986** as the basis for certain counts. Additionally, Neuman claims that he can recover under the Illinois Human Rights Act. The State of Illinois and the Office of the Attorney General claim that Neuman's claims under these statutes are barred by state sovereign immunity and therefore must be dismissed for lack of subject matter jurisdiction under **Rule 12(b)(1).**

*a. Neuman's Claims Under Federal Law*

The Eleventh Amendment recognizes that each state is a sovereign entity, and "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without consent."*Hans v. Louisiana,* **134 U.S. 1, 13, 10 S.Ct. 504, 33 L.Ed. 842 (1890).** By its express terms, the Eleventh Amendment bars federal courts from hearing suits against a state brought by citizens of any other state. **U.S. CONST. AMEND. XI.**[FN1] Additionally, the United States Supreme Court has consistently held that unconsenting states are immune from suits brought in federal court by their own citizens as well as those brought by citizens of other states. *Ameritech Corp. v. McCann,* **297 F.3d 583, 585 (7th Cir.2002) (citing** *Edelman v. Jordan,* **415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)).**

FN1. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Eleventh Amendment immunity applies to injunctive suits against the states as well as those for damages. *Id.* The Eleventh Amendment also protects state agencies and state officials from such actions. *See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 73-76, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).See also Illinois Assoc. of Mortgage Brokers v. Office of Banks and Real Estate, 308 F.3d 762, 765-66 (7th Cir.2002); Ryan v. Illinois Dep't of Children & Family Servs., 185 F.3d 751, 758 (7th Cir.1999)* (explaining that as an agency of the state, Illinois Department of Children & Family Services was entitled to Eleventh Amendment immunity against § 1983 claims).

**\*5** There are narrow circumstances in which a suit can proceed against a state, its agencies, or officials. For instance, a state can waive the protections of the Eleventh Amendment and consent to be sued in federal court.*Ameritech,* 297 F.3d at 585.Additionally, the United States Congress can use its enforcement powers under the Fourteenth Amendment to abrogate a state's Eleventh Amendment immunity. *Id.* Furthermore, a suit for prospective injunctive relief (though not money damages) may proceed against state officials in limited circumstances, as outlined in *Ex Parte Young.*209 U.S. 124 (1908); *see Ameritech,* 297 F.3d at 585.

Neuman's suit against the State of Illinois and the Office of the Attorney General does not fall within any of the Eleventh Amendment's exceptions. These defendants have neither consented to this suit, nor have they waived the immunity they enjoy under the Eleventh Amendment. Furthermore, Neuman fails to show that Congress has validly abrogated state sovereign immunity in any statute pertaining to the federal claims he asserts in his complaint. It is well-established that Congress's enactment of 42 U.S.C. § 1983 did not "override the traditional sovereign immunity of the States."*Quern v. Jordan,* 440 U.S. 334, 341 (1979).*Accord Ryan v. Illinois Dept. Fo Children and Family Services, 185 F.3d 751, 758 (7th Cir.1999); Kroll v. Board of Trustees of University of Illinois,* 934 F.3d 904, 909 (7th Cir.1991), *cert. denied,*502 U.S. 941 (1991). The Eleventh Amendment likewise bars suits for damages against the state and its agencies under §§ 1985 and 1986. *See Keri v. Board of Trustees of Purdue Univ., 458 F.3d 620, 640-41 (7th Cir.2006); Harker v. Univ. Professionals of Illinois, 1999 WL 38102, at \*2 (7th Cir.1999)* (unpublished).

Additionally, Neuman cannot proceed with his claims for prospective injunctive relief, because the doctrine of *Ex parte Young* applies only against state officials. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605* ("The doctrine of *Ex parte Young*... has no application in suits against the States and their agencies, which are barred regardless of the relief sought."); *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't, 510 F.3d 681, 695-97 (7th Cir.2007)* (finding that plaintiff's claims for prospective relief were barred because she brought suit against state agencies rather than state officials). Here, Neuman sues the State of Illinois and the Office of the Attorney General, an agency of the state-two parties which enjoy sovereign immunity.

Therefore, the Court lacks subject matter jurisdiction over Neuman's federal claims, as the defendants are immune from suit. Thus, Neuman's claims under federal law must be dismissed under **Rule 12(b)(1)** insofar as they are directed against the State of Illinois and the Office of the Attorney General for the State of Illinois.

*b. Neuman's Claims Under State Law*

**\*6** Neuman also raises several claims against the State of Illinois and the Office of the Attorney General under the Illinois Human Rights Act. As "state rules of immunity are binding in federal court with respect to state causes of action," Neuman cannot proceed on his state law claims against the State of Illinois or the Office of the Attorney General unless Illinois's immunity rules would permit an Illinois court to hear his claims. *See **Omosegbon v. Wells**, **335 F.3d 668, 673 (7th Cir.2003) (examining whether Indiana's sovereign immunity rules prohibited plaintiff from proceeding in a contract action)**.* In other words, Neuman must point to a statute or rule that shows that the Illinois legislature has waived its sovereign immunity.

The State Lawsuit Immunity Act, **745 ILCS 5/1,** specifically provides that

[e]xcept as provided in the Illinois Public Labor Relations Act, the Court of Claims Act, the State Officials and Employees Ethics Act, Section 1.5 of this Act, and, except as provided in and to the extent provided in the Clean Coal FutureGen for Illinois Act, the State of Illinois shall not be made a defendant or party in any court.

By its terms, the statute indicates that the State of Illinois has not consented to suit in its courts under the Human Rights Act. Also, Neuman clearly does not fall under any of the exceptions in **745 ILCS 5/1.5,** which permits state employees to bring certain suits against the State of Illinois. And because the Office of the Attorney General is a department of the state, state sovereign immunity bars Neuman's claims against it to the same extent as it bars his claims against the State of Illinois. *Foley v. American Federation of State, County, & Municipal Employees, Council 31, Local No. 2258,* 199 Ill.App.3d 6, 144 Ill.Dec. 903, 556 N.E.2d 581, 585-86 (Ill.App.1990) ("[A] suit against a department of the State is a suit against the State.").

Additionally, with limited exceptions, the Human Rights Act itself confers exclusive jurisdiction to hear civil rights claims upon the Human Rights Commission. *Weatherly v. Illinois Human Rights Comm'n,* 338 Ill.App.3d 433, 273 Ill.Dec. 299, 788 N.E.2d 1175, 1178 (Ill.App.Ct.2003). None of the exceptions to this rule apply in this particular case. *Id.; see Castaneda v. Illinois Human Rights Comm'n,* 132 Ill.2d 304, 138 Ill.Dec. 270, 547 N.E.2d 437 (Ill.1989) (outlining the narrow circumstances in which exhaustion of one's administrative remedies through the Commission is not required). Moreover, the statute specifically provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."**775 ILCS 5/8-111(D).**

It is abundantly clear that the State of Illinois and the Office of the Attorney General have not consented to suit or otherwise waived sovereign immunity. As a result, Neuman's claims under the Human Rights Act against the State of Illinois and the Office of the Attorney General must be dismissed under **Rule 12(b)(1)**. The Court need not address defendants' other arguments, as all claims against these defendants are now dismissed.

*C. Conclusion*

**\*7** Accordingly, the Court hereby **GRANTS** the defendants' motion to dismiss (Doc. 232) and **DISMISSES** all claims against Judge Nemenoff, Karen McNaught, the State of Illinois, and the Office of the Attorney General for the State of Illinois.

**IT IS SO ORDERED.**

S.D.Ill.,2008.
Neuman v. U.S.
Slip Copy, 2008 WL 3285761 (S.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.