080382.26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HERAND ABCARIAN, M.D., F.A.C.S.,

        Plaintiff,

    v.

TIMOTHY MCDONALD, M.D., J.D.
PATRICIA KALE, WILLIAM H.
CHAMBERLIN, JR., M.D., NIKKI
CENTOMANI, STUART ALLEN,
BARBARA MCCOLGIN, CHRIS J.
MOLLET, ESQ., THOMAS R.
BEARROWS, ESQ., CHRISTINE
FLANINGAM, MICHAEL TRUCCO, ESQ.
and THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

        Defendants.

No.   08 CV 3843

Honorable Samuel Der-Yeghiayan

## DEFENDANT MICHAEL TRUCCO'S MOTION TO DISMISS

Defendant, Michael T. Trucco ("Trucco"), by his attorneys, John J. Duffy, Michael J. Borree, Edward E. Fu and Donohue Brown Mathewson & Smyth LLC, moves this Honorable Court to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support thereof, defendant states as follows:

## INTRODUCTION

Herand Abcarian, M.D. ("Abcarian") has sued the University and its personnel, including its inside counsel (collectively, "the University"), making the absurd claim that they spent almost $1 million to settle medical malpractice allegations against him only so they could conspire to embarrass Abcarian and report him to federal and state authorities.  Abcarian ups the ante by also suing here the University's outside counsel from the state court proceedings, Michael

Trucco.   Trucco, however, was not even retained to file a petition to intervene until *after* Abcarian alleges the conspiracy by the University arose and *after* the events that allegedly caused him damage.

Abcarian's claim must be dismissed because a plaintiff cannot bring a new claim against a defendant based on alleged misconduct in an underlying case.  Also, Abcarian's Section 1981, 1983 and 1986 claims against Trucco cannot stand because an attorney representing his client in state court litigation is not a state actor for purposes of those statutory causes of action.  Abcarian's state tort law claims for libel, conspiracy, intentional infliction of emotional distress and abuse of process also fail to state a cause of action against Trucco and must be dismissed.

## FACTUAL BACKGROUND

This lawsuit is premised on an alleged conspiracy spanning several years and involving numerous physicians, attorneys, directors and now the entire Board of Trustees of the University of Illinois.   The precipitating events leading to the alleged plot against Abcarian relate to his displeasure with having to pay certain fees to the University.  (D.E. 1 at 9).  Abcarian has voiced concerns over having to pay "ever increasing contributions" to the University's Medical Service Plan for insurance while, according to Abcarian, the premiums for medical malpractice coverage in Illinois have been steadily decreasing.  (*Id.*)  Abcarian alleges that his criticisms have caused the University to harbor so much ill will towards him over the course of several years that they eventually hatched an elaborate and sophisticated plot to embarrass Abcarian by paying almost $1 million to settle a malpractice claim brought by a patient against him.  (*Id.* at 10-12).

According to Abcarian, after fortuitously receiving information sometime in July 2005 about a potential medical malpractice lawsuit against him, the University sprang into action.  Abcarian

asserts that a family member of John Behzad, a former patient of Abcarian, retained an attorney, Kathleen Zellner, who wrote a letter about a potential wrongful death lawsuit to Abcarian; who forwarded the letter to William Chamberlain, M.D., Chief Medical Officer of University of Illinois Medical Center; who forwarded it to Nikki Centomani, Director of Safety and Risk Management; who forwarded it to Timothy McDonald, M.D., J.D., Associate Chief Medical Officer for Safety and Risk Management; whom Abcarian believes independently harbors animosity towards him because Dr. McDonald works with Patricia Kale, the Director of Risk Management; who Abcarian believes has been spearheading the campaigns for the "ever increasing contributions" for malpractice premiums. (*Id.* at 10-12). And thus, Abcarian concludes, the web of deceit was spun. (*Id.* at 12).

Abcarian alleges that these defendants worked in concert to cause Zellner to file the malpractice lawsuit against him in the Circuit Court of Cook County, Illinois. (*Id.* at 12). Abcarian claims that the lawsuit was filed after the University had settled all claims against it with Behzad's estate. Abcarian further alleges that certain defendants directed Zellner not to have a summons issued to obtain service on Abcarian so that defendants could obtain an order that would preclude Abcarian from contesting the settlement. (*Id.* at 14). Abcarian theorizes that the goal of the settlement agreement and the malpractice lawsuit was to enable the University to report the malpractice lawsuit and settlement to the Illinois Department of Financial and Professional Regulation ("IDFPR") and the National Practitioner Data Bank ("NPDB"). (*Id.* at 12). This allegedly would cause Abcarian acute mental distress in knowing that his reputation had been harmed. (*Id.* at 14).

In reality, it was Bezhad's estate who filed a complaint against Dr. Abcarian in state court, as it was required to do under local court rules to have the settlement approved and the settlement funds

- 3 -

distributed to the patient's family members. The state court approved the settlement. Thereafter, the University, as it was required to do under state and federal law, reported Dr. Abcarian to the IDFPR and NPDB.

Abcarian subsequently received notification of the settlement through the IDFPR. (*Id.* at 21). Claiming that the medical negligence alleged in the malpractice case was meritless and that the lawsuit had been settled without his authority, Abcarian hired an attorney to attempt to vacate the dismissal order and to have the University remove its report of his malpractice to the IDFPR.

Abcarian filed a petition pursuant to 735 ILCS 5/2-1401 against Bezhad's estate in the Circuit Court of Cook County, Illinois to vacate the settlement agreement. Because the University's interest in the settlement agreement was at stake, the University hired Trucco, an independent attorney, to represent it in that action. Trucco protected the University's interests by filing a petition to intervene and by seeking leave to file a motion to dismiss Abcarian's petition to vacate. The court ultimately vacated the dismissal order but refused to vacate the approval of the settlement agreement. The Bezhad family then voluntarily dismissed the lawsuit pursuant to 735 ILCS 5/2-1009. The court never ruled on the University's petition to intervene. Abcarian later filed a petition for an award of fees as a sanction against Trucco and the University for allegedly trying to intervene improperly. That petition was denied by the circuit court.

Abcarian subsequently appealed the circuit court's rulings, but the Illinois Appellate Court affirmed all of the lower court's decisions. Significantly, as to Abcarian's request for sanctions, the Illinois Appellate Court found, "At the least, the Board's motion to intervene was grounded in fact and law" and therefore, properly filed by Trucco. As for Abcarian's constitutional claims, the court concluded, "Nor were defendant's constitutional rights violated by the court's order approving

settlement." (*See* Order from the Illinois Appellate Court, First District, attached as Exhibit A at 6, 9). The appellate court also reprimanded Abcarian in its opinion that he had omitted pertinent facts while overstating others in an effort to support his alleged conspiracy theory. (*Id.* at 6).

Abcarian now reprises those arguments, which have already been considered and rejected by the Illinois Appellate Court. For the reasons stated below, Abcarian's claims must be dismissed as to Trucco under Rule 12(b)(6).

<u>**ARGUMENT**</u>

I.    **Abcarian's Claims Based on Violations of 42 U.S.C. §§ 1983, 1986 and 1981 Must Be Dismissed Under Fed. R. Civ. P. 12(b)(6) For Failure to State a Claim Against Trucco As He Is Not A State Actor.**

In Counts I through V of the complaint, Abcarian alleges violations of 42 U.S.C. §§ 1983, 1986 and 1981 against Trucco. Each of those theories requires conduct by a state actor acting under color of law. The claim is properly dismissed under Fed. R. Civ. P. 12(b)(6) because Trucco was not a state actor. *Heller v. Heller*, 1989 U.S. Dist. LEXIS 14577 at * 12 (N.D. Ill. 1989).

Lawyers who are not also parties in interest and are engaged in private litigation on behalf of clients do not act under color of state law. *Id.* (quoting *Jones v. Jones*, 410 F.2d 365, 366 (7th Cir. 1969) *overruled on other grounds, Beard v. Robinson*, 563 F.2d 331, 338 (7th Cir. 1977) (holding the Illinois five-year statute of limitations applies to statutory claims brought under the Civil Rights Acts)). This is because every litigant is entitled to a zealous advocate in the presentation of his matters before the court. *Jones*, 410 F.2d at 366. Although lawyers are considered officers of the court, they are not officers of the state within the meaning of the Civil Rights Act. *Id.* It would be improper for attorneys and judges who were not parties in interest to be joined with the other party defendants. *Id.*

- 5 -

In this case, as in *Heller* and *Jones*, Abcarian cannot state a claim against Trucco based on alleged violations of 42 U.S.C. §§ 1983, 1986 and 1981 because Trucco was acting only in his capacity as the defendants' lawyer and had no private interest in the litigation. Abcarian explicitly acknowledges as much in his complaint. (*See, e.g.,* Ex. 1, pg. 23 at ¶ 85; pg. 24 at ¶¶ 88, 90, 91; pg. 25 at ¶¶ 92, 93). Abcarian also admits that Trucco had nothing to do with the filing of the medical malpractice lawsuit, the ensuing settlement negotiations or the reporting to the IDFPR and the NPDB. (*See* Ex. 1, pp. 13 & 17 at ¶¶ 43, 44 & 64). Abcarian cannot allege that Trucco was a state actor for purposes of his claims pursuant to 42 U.S.C §§ 1983, 1986 and 1981.

## II.     Abcarian Cannot Bring A New Claim Against Trucco Based On His Conduct From The Underlying Litigation As He Is Afforded Immunity Arising Out Of The Conduct Of Litigation.

Having failed to obtain sanctions against Trucco in state court, Abcarian now attempts to relitigate those issues here. Because Trucco's involvement in the underlying case was strictly limited to his representation of the University in the petition to vacate the settlement agreement, Abcarian cannot as a matter of law institute a new, independent cause of action against Trucco.

A plaintiff cannot bring a new claim against a defendant based on alleged misconduct in an underlying case. *McKenzie v. Illinois Department of Transportation,* 92 F.3d 473, 486 (7th Cir. 1996). In *McKenzie*, the Seventh Circuit rejected a Title VII retaliation claim alleging that the defendant employer instructed the plaintiff's co-employees not to give affidavits or other assistance to help her with her sex discrimination claim. *McKenzie*, 92 F.3d at 486. The Seventh Circuit explained that the conduct of the parties during discovery, such as an attempt to obstruct the litigation process of the underlying litigation, is inseparable from the litigation of the claim itself. Accordingly, "it is a matter to be resolved pursuant to court rules, not by Title VII." *Id.*

It is well accepted that the conduct of litigation subject to supervision by the court cannot constitute independent grounds of liability:

> The primary reason for granting attorneys absolute immunity is that their unique function as advocates requires that they be able to present their client's case at trial without intimidation or harassment…. Conducting discovery under the rules of civil procedure falls within the unique duties of an advocate and such activities are conducted in the adversarial arena where opposing counsel and the trial court can quickly put the brakes on unethical or unlawful behavior.

*Steffes v. Stepan Co.,* 144 F.3d 1070, 1076 (7th Cir. 1998) (citing *Auriemma v. Montgomery,* 860 F.2d 273, 278 (7th Cir. 1988), *cert. denied,* 492 U.S. 906 (1989)); *see also Marchioni v. Bd. Of Educ.*, 341 F. Supp. 2d 1036, 1052 (N.D. Ill. 2004) (citing *NSB Technologies, Inc. v. Specialty Direct Marketing, Inc.*, 2004 U.S. Dist. LEXIS 16830 at *3 (N.D. Ill. Aug. 20, 2004)); *Cf. In re Samuels*, 126 Ill. 2d 509, 522 (1989) (discussing Illinois Supreme Court's inherent power to discipline attorneys using the court's "rules and decisions"); *Skolnick v. Altheimer and Gray*, 303 Ill. App. 3d 27, 30 (1999), *reversed in part on other grounds*, 199 Ill 2d 214 (2000) (observing that the Illinois Supreme Court is the only forum for seeking redress for the mere misconduct of an attorney).

Here, Abcarian improperly attempts to assert a new claim against Trucco based only on his conduct during the underlying litigation in state court. Indeed, the only conduct alleged against Trucco relates to his services as counsel of record during the litigation of the Petition to Vacate the Settlement Agreement. (*See, e.g.,* Ex. 1 pg. 24 at ¶¶ 88, 90, 91; pg. 25 at ¶¶ 92, 93). Abcarian concedes as much in his complaint: "Chris J. Mollet, and upon information and belief, Thomas R. Bearrows acting under color of law on behalf of The Board of Trustees of The University of Illinois, engaged the services of Michael Trucco to resist any attempt by Dr. Abcarian to reopen the lawsuit in the Circuit Court of Cook County and defend the claim made against him." (Ex. 1, pg. 23 at ¶

85).  As in *McKenzie*, such alleged conduct by Trucco, which the Illinois Appellate Court held was

grounded in fact and law and was not frivolous, cannot form the basis of a new cause of action in

federal court.  This alone warrants dismissal of Abcarian's complaint.

**III.    This Court Should Decline To Exercise Supplemental Jurisdiction Over Abcarian's Remaining State Law Claims.**

Abcarian's complaint contains claims based on both federal and state law.  As set forth

above, Abcarian's federal claims should be dismissed for failure to state a claim upon which relief

can be granted.  As for the state law claims, there exists no independent basis for jurisdiction over

them.  In cases where all federal claims are dismissed before trial, the usual practice in the Seventh

Circuit is to decline to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C.

§ 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over a claim when it

has dismissed all claims over which it has original jurisdiction); *Sanchez & Daniels v. Koresko*, 503

F.3d 610, 615 (7th Cir. 2007).  If the Court retains jurisdiction over the state law claims, dismissal of

each claim is appropriate.

**IV.    Abcarian's State Law Claims Also Must Be Dismissed Pursuant to FRCP 12(b)(6) For Failure to State a Claim.**

Abcarian's complaint fails to allege the essential elements of the common law tort claims

asserted.  Although the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail

the facts upon which he bases his claim, he must set out sufficient factual matter to outline the

elements of his cause of action or claim, proof of which is essential to his recovery. *See Windy City*

*Metal Fabricators & Supply, Inc., v. CIT Technology Financing Services, Inc.* No. 07-1567, 2008

U.S. App. LEXIS 16428 at ** 6-7 (7th Cir. 2008); *Benson v. Cady,* 761 F.2d 335, 338 (7th Cir.

1985).  In considering a Rule 12(b)(6) motion to dismiss, a court is not compelled to accept

conclusory allegations concerning the legal effect of facts set out in the complaint. *Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 730 (7th Cir. 1994). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein,* 939 F.2d 463, 467 (7th Cir. 1991).

### A.    Abcarian Cannot State a Claim for Libel Against Michael Trucco, the Attorney Hired to Represent Defendants In Their Petition to Intervene.

Even had Abcarian alleged some actionable defamatory statement by Trucco (which he has not, the absolute litigation privilege affords immunity to attorneys and other participants in the judicial process from tort liability arising out of statements made in connection with litigation. *Steffes*, 144 F.3d 1074 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 439 (1976) (White, J., concurring) (describing common-law privilege)). In Illinois, the privilege is quite broad:

> An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of judicial proceeding in which he participates as counsel, if it has some relation thereto. The absolute privilege is afforded even when malice is assumed to have motivated the attorney. All doubts are to be resolved in favor of finding that the privilege applies.

*See Edelman v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156 (2003); *Libco v. Adams*, 100 Ill. App. 3d 314, 317 (1981); *Weiler v. Stern*, 67 Ill. App. 3d 179, 182 (1978).

Federal courts widely recognize the litigation privilege. *See Imbler,* 424 U.S. at 439; *Steffes*, 144 F. 3d at 1074; *Potts v. Hilco Trading Co.*, 1997 U.S. Dist. LEXIS 16037 at *8 (N.D. Ill. 1997). The common law litigation privilege provides that conduct that is undertaken in the adversarial setting of litigation and is otherwise remediable in that litigation cannot form the basis of further litigation. *Steffes*, 144 F. 3d at 1074. The privilege applies to attorneys, witnesses, judges, and other participants in judicial proceedings. *Id.* at 1075; *see Imbler,* 424 U.S. at 439. "The purpose of the

litigation privilege is to enable attorneys to represent their clients – and clients to advance their own positions – zealously, without threat of liability." *Marchioni* , 341 F. Supp. 2d at 1052.

In this case, the only connection Michael Trucco has with the underlying facts is his representation of the defendants in their Petition to Intervene. (*See, e.g.,* Ex. 1, pg. 23 at ¶ 85; pg. 24 at ¶¶ 88, 90, 91; pg. 25 at ¶¶ 92, 93). As in *Imbler, Steffes*, and *Edelman*, Trucco's representation of defendants was absolutely privileged and cannot form the basis of Abcarian's claim for libel. Even Abcarian's unsupported conclusion that the defendants' actions were "purposeful, intentional and malicious" are insufficient to defeat the litigation privilege. *See Potts*, 1997 U.S. Dist. LEXIS 16037 at *13 (holding plaintiff's allegations that defendant intentionally and maliciously made false statements were merely conclusory statements, which warranted a judgment on the pleadings in favor of defendant).

Additionally, Abcarian's allegation that Michael Trucco was "acting in furtherance of the conspiracy" is a conclusory statement made without any factual support. *See Tarkowski v. Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir. 1980); *Hume & Liechty Veterinary Assoc. v. Hodes*, 259 Ill. App. 3d 367, 369 (1994). Abcarian's complaint on its face concedes that Michael Trucco had no involvement in the formation of the alleged conspiracy or with the making of the alleged libelous statement itself. Abcarian states in his complaint:

> Despite the refusal of the Executive Committee of the MSP to approve the reporting of Dr. Abcarian to the National Practitioner Data Bank, nevertheless, upon information and belief, and in furtherance of the conspiracy by the Defendants herein, *except Michael Trucco*, to discredit Dr. Abcarian,…reported to the National Practitioner Data Bank that a settlement of a medical negligence claim had been made on behalf of Herand Abcarian, M.D. … Such report was wholly false and fraudulent because no such settlement of any such medical negligence claim was made….

Ex. 1, pg. 17 at ¶ 64 (emphasis added).

- 10 -

As discussed above, Trucco was acting only on behalf of his clients during the underlying litigation. As the agent of the defendants, Trucco is legally incapable of conspiring with the other defendants. *See Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 22 (Ill. 1998) (stating because the acts of an agent are considered in law to be the acts of the principal, there can be no conspiracy between a principal and an agent). Abcarian cannot state a claim for libel against Trucco.

### B.    Abcarian's Claim for Intentional Infliction of Acute Mental Distress Must Be Dismissed Because Trucco's Conduct in the Underlying Litigation Cannot Be Considered Extreme and Outrageous.

With respect to Trucco, Abcarian cannot state a claim for intentional infliction of acute mental distress. To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that: 1) the defendant's conduct was extreme and outrageous; 2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and 3) the defendant's conduct actually caused severe emotional distress. *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 156 (1999). Liability only attaches in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. *Id*.

Similar to the reasoning above, Trucco's conduct cannot form the basis of a new cause of action. As the Seventh Circuit has held, "Participating in litigation under the rules of civil procedure falls within the unique duties of an advocate, and such activities are conducted in the adversarial arena where opposing counsel and the trial court can quickly put the brakes on unethical or unlawful behavior". *Steffes,* 144 F.3d at 1076. If Abcarian believed he was aggrieved by Trucco's actions in the underlying litigation, Abcarian was obligated to seek redress from the court in that matter. *See*

- 11 -

*McKenzie*, 92 F.3d at 486.  Having done so through his motion for sanctions, which failed in the state trial and appellate courts, he cannot now turn to this Court for relief.

Moreover, the complaint fails to identify specifically what conduct by Trucco could possibly constitute extreme and outrageous behavior.  Even if the Court strained to interpret Abcarian's allegations to imply that "objecting vigorously" during the litigation process should be considered extreme and outrageous, which it is not required to do (*see Lindgren v. Moore*, 907 F. Supp. 1183, 1186 (N.D. Ill. 1995)), Abcarian cannot state a claim against Trucco.  Trucco's conduct in the underlying litigation was privileged.  *See Edelman,* 338 Ill. App. 3d 156; *Marchioni ,* 341 F. Supp. 2d 1052.

Additionally, to state a claim for an action for intentional infliction of emotional distress, the complaint must be specific and detailed beyond what is normally considered permissible in pleading a tort action.  *Welsh*, 306 Ill. App. 3d at 156; *see also Benson v. Cady,* 761 F.2d 335, 338 (7th Cir 1985).  A plaintiff must allege some facts which, if true, would support the conclusion that the emotional distress actually suffered as a proximate result of the defendant's conduct was severe.  Merely characterizing emotional distress as severe is not sufficient.  *Welsh*, 306 Ill. App. 3d at 156.

Here, Abcarian merely states in a conclusory fashion that he experienced and continues to experience severe emotional distress.  Abcarian provides no facts detailing the nature of the alleged emotional distress, nor does he provide any indication as to how the emotional distress was severe and ongoing.  Still further, Abcarian fails to explain how the alleged emotional distress was a result of Trucco's conduct as opposed to the University's conduct.  Such bare bones pleading is not sufficient to survive a Rule 12(b)(6) motion to dismiss.  *See Perkins,* 939 F.2d at 467.  Abcarian's claim for intentional infliction of emotional distress must be dismissed.

**C.**     **Abcarian's Claim for Abuse of Process Must Be Dismissed Because Trucco Was Not Involved In the Filing of the Malpractice Lawsuit Against Dr. Abcarian.**

The tort of abuse of process is defined as the misuse of legal process to accomplish some purpose outside the scope of the process itself.  The elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings.  To satisfy the first element, a plaintiff must plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment.  *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165-166 (2004).  To satisfy the second element, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process.  *Id*.  The elements are strictly construed, as the tort of abuse of process is not favored under Illinois law.  *Id*.

In this case, Abcarian cannot satisfy either element of the tort of abuse of process.  First, as required under the statute, the defendants did not institute the malpractice proceedings against Dr. Abcarian.  The complaint on its face concedes that Attorney Kathleen Zellner filed the malpractice lawsuit on behalf of David Behzad, as Special Administrator for the Estate of John Bezhad, against Dr. Abcarian.   Unable to satisfy this basic pleading requirement, Abcarian alleges that defendants acted improperly in "causing and requiring" Ms. Zellner to file the malpractice lawsuit.   Because the elements are strictly construed, however, Abcarian's theory fails as a matter of law.  *See id*.

Moreover, Trucco had no involvement with the matter until he was retained to file the petition to intervene in Abcarian's petition to vacate the settlement of the malpractice lawsuit – well after the settlement was entered and the malpractice complaint forming the basis of the abuse of process claim was filed against Dr. Abcarian.  Although Abcarian does not plead that the petition to intervene was itself an abuse of process, Abcarian would similarly be precluded from doing so

because the petition was filed in direct response to Abcarian's petition to vacate the settlement agreement. Trucco was therefore at all times responding to Abcarian's legal filing and working within the purview of the process instituted by Abcarian himself. *See id*. Abcarian cannot meet the second element of the tort of abuse of process.

      **D.**      **Count VI Must Be Dismissed Because Trucco Does Not Have the Ability To Provide the Relief Requested.**

In Count VI of his complaint, Abcarian requests an order for equitable relief requiring defendants to "submit all appropriate and necessary documentation" along with an explanation of the alleged wrongdoing on the part of the defendants to various agencies. Trucco, however, cannot effect the desired relief himself because, as their attorney, he can only act on behalf of defendants. Even if Trucco were compelled to take such action, he does not possess the ability or information to do so himself. Any such relief requiring direct action involving Abcarian's medical malpractice file must be directed to The Board of Trustees or the University of Illinois employees. *See Nucor Corp. v. Aceros Maquilas De Occidente, S.A. De C.V.*, 28 F.3d 572, 578 (7th Cir. 1994) (stating if the equitable remedy sought cannot afford relief to Abcarian, the remedy will not be heard). Count VI must be dismissed for failure to state a claim against Trucco.

**V.**      **Trucco Adopts The Memorandum In Support of The University Defendants' Motion to Dismiss The Complaint.**

To the extent that the University defendants' motion to dismiss the complaint for failure to state a claim in Counts I through VI applies to Trucco, he adopts them as if fully set forth herein.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Michael T. Trucco respectfully requests that this Honorable Court enter an order dismissing Abcarian's cause of action with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and for any other relief this Court deems necessary and proper.

Respectfully submitted,

MICHAEL T. TRUCCO


s/ John J. Duffy

By:  _____

John J. Duffy

John J. Duffy
Michael J. Borree
Edward E. Fu
DONOHUE BROWN MATHEWSON & SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, IL  60603
Telephone:    (312) 422-0900
Facsimile:    (312) 422-0909

Case 1:08-cv-_  _43   Document 1   Filed 07/07/2008   Page 1 of 47

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

HERAND ABCARIAN, M.D., F.A.C.S.          )
                                         )
Plaintiff,                               )
                                         )
v.                                       )
                                         )
TIMOTHY MCDONALD, M.D., J.D.,            )
PATRICIA KALE, WILLIAM H.                )
CHAMBERLIN, JR., M.D.,                   )
NIKKI CENTOMANI, STUART ALLEN,           )
BARBARA MCCOLGIN, CHRIS J.               )    FILED: JULY 7, 2008
MOLLET, ESQ., THOMAS R.                  )    08CV3843
BEARROWS, ESQ., CHRISTINE                )    JUDGE DER-YEGHIAYAN
FLANINGAM, MICHAEL TRUCCO, ESQ.          )    MAGISTRATE JUDGE NOLAN
and THE BOARD OF TRUSTEES OF THE         )    JH
UNIVERSITY OF ILLINOIS,                  )
                                         )
Defendants.                              )

## COMPLAINT AT LAW

Plaintiff Demands Trial by Jury.

### INTRODUCTION

This action is brought to obtain redress for the intentional and malicious actions of certain
members of the staff of the University of Illinois and the University of Illinois Medical Center at
Chicago who, acting under color of law, conspired to and did retaliate against Plaintiff, Herand
Abcarian, M.D., F.A.C.S., for his exercise of his free speech rights in the form of public criticism
of the policies and actions or inactions of certain members of the staff, as required of him as a
part of his duties and responsibilities as a member of the Medical Service Plan Board of
Directors.  In retaliation therefore,  these staff members, Defendants herein, conspired to and
arranged for a meritless lawsuit alleging medical negligence to be prosecuted against Plaintiff,
settled such case without his knowledge that such lawsuit had ever been filed, and then
fraudulently reported to the Illinois Department of Financial and Professional Regulation,
Division of Professional Regulation and the National Practitioner Data Bank that a medical
negligence case against Plaintiff had been settled, thereby causing him to incur considerable

1



Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 2 of 47

expenses to reopen and terminate the fraudulent case against him, respond to investigative demands from the State of Illinois Division of Professional Regulation, the National Practitioner Data Bank and the State of Florida Department of Health, Division of Medical Quality Assurance questioning the status of his license, to suffer severe mental distress and anguish, and personal and professional embarrassment. Plaintiff hereby asserts the following claims against the Defendants in the above-entitled action:

(1)    VIOLATIONS OF 42 U.S.C. 1983: FREE SPEECH ON MATTERS OF PUBLIC CONCERN AND DUE PROCESS.

(2)    VIOLATIONS OF 42 U.S.C. 1983, RIGHT TO TRIAL BY JURY.

(3)    VIOLATIONS OF 42 U.S.C. 1983, EQUAL PROTECTION OF THE LAWS

(4)    VIOLATIONS OF 42 U.S.C. 1986, EQUAL PROTECTION OF THE LAWS

(5)    VIOLATION OF 42 U.S.C. 1981, EQUAL PROTECTION

(6)    EQUITABLE AND OTHER RELIEF FOR DR. ABCARIAN'S CONTINUING DAMAGES ARISING OUT OF DUE PROCESS AND EQUAL PROTECTION VIOLATIONS

(7)    SUPPLEMENTAL JURISDICTION: INTENTIONAL INFLICTION OF MENTAL DISTRESS

(8)    SUPPLEMENTAL JURISDICTION: ABUSE OF PROCESS

(9)    SUPPLEMENTAL JURISDICTION: LIBEL

## JURISDICTION

1.  Jurisdiction of this court arises under 28 U.S.C. secs 1331, 1337, 1343(a), and 1367(a); 42 U.S.C. secs. 1981, 1983, 1985, 1986, and 1988.

2.  Jurisdiction of this court for the pendent or supplemental claims is authorized by 28 U.S.C. sec 1367(a) and F.R.Civ.P. 18(a), and arises under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). See also: *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, (2006).

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 3 of 47

## PARTIES

3.   Herand Abcarian, M.D., FACS., is the Turi Josefsen Professor of Surgery and is Board
Certified by the American Board of Surgery and the American Board of Colon and Rectal
Surgery. Among his professional accomplishments, he has been the President of the Illinois State
Surgical Society and the Chicago Surgical Society, and has served as the Executive Director of
the American Board of Colon and Rectal Surgery.  He is also been the President of the American
Society of Colon and Rectal Surgeons and the member of the Board of Directors of the American
Board of Medical Specialties.  He has was also a founding member and a member of the Board
of Governors of the Society of American Gastrointestinal Endoscopic Surgeons.  He has held
academic appointments at four institutions, and has otherwise enjoyed an outstanding
professional career.  He is licensed to practice medicine in the State of Illinois and in the State of
Florida and is a citizen of the United States. He has been a member of the medical staff of the
University of Illinois Medical Center at Chicago since 1972.  He has been President – Executive
Committee of the Medical Staff, University of Illinois Chicago Medical Center, 2001-2003 and
at all times material hereto was employed by and was the Head of the Department of Surgery,
University of Illinois College of Medicine at Chicago, and Service Chief of the Department of
Surgery of the University of Illinois Medical Center at Chicago located the Northern District of
Illinois in the City of Chicago, County of Cook, State of Illinois and he is a resident of Cook
County, Illinois. A copy of his curriculum vitae is attached hereto as Exhibit A.  Such curriculum
vitae demonstrates that Dr. Abcarian is one of the foremost colo-rectal surgeons in the United
States. Prior to the filing of the lawsuit in the Circuit Court of Cook County, Illinois, County
Department, Law Division, styled as DAVID BEHZAD, as Special Administrator for the Estate
of JOHN BEHZAD, deceased, Plaintiff, vs. HERAND ABCARIAN, M.D., Defendant, No. 06 L
006172, the fraudulent claim against Dr. Abcarian, no lawsuit alleging medical negligence had
been prosecuted against him to settlement or judgment and his reputation and professional
standing were unquestioned.

4.   Defendants are all natural persons and employees of the University of Illinois and they are
sued in their individual capacity except for the Board of Trustees of The University of Illinois
which is a public corporation sued in its official capacity.

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 4 of 47

5. Defendant Timothy McDonald, M.D., J.D., is Associate Chief Medical Officer for Safety and Risk Management, University of Illinois Medical Center at Chicago (hereinafter UIMCC) and he holds the academic rank as Associate Professor, University of Illinois College of Medicine.

6. Defendant Patricia Kale is Director, University Office of Risk Management, University of Illinois and is in charge, among other things, of the procurement and administration of insurance coverage for medical malpractice insurance for the medical staff at the UIMCC.

7. Defendant William H. Chamberlin, Jr. M.D. is the Medical Director of UIMCC. Although he is licensed to practice medicine, he does not do so and instead gives his attention to administrative matters. He does not list himself as board certified in any medical specialty in his Physician Profile with the Illinois Department of Financial and Professional Regulation. He supervises Timothy McDonald M.D. in all Risk Management and Safety related matters and is the official member of the UIMCC staff responsible for ultimate resolution of all complaints brought against members of the medical staff. He is the chairman of the committee of UIMCC which approves settlements of medical negligence claims.

8. Defendant Nikki Centomani is Director of Safety and Risk Management, UIMCC and is involved in risk management, insurance issues and claims as they relate to UIMCC. She and Dr. Timothy McDonald have a close personal and working relationship.

9. Defendant Stuart Allen is Claims Manager, Office of Claims Management, University of Illinois at Chicago and administers the claims function of the University of Illinois Self-Insurance Plan for General and Professional Liability as it relates to medical negligence claims. Among other things, he is responsible for the investigation, evaluation and management of medical malpractice claims and litigation involving the UIMCC and staff.

10. Defendant Barbara McColgin, is a Claims Analyst, Claims Management Office, University of Illinois at Chicago and is involved in the investigation of claims of medical negligence.

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 5 of 47

11. Defendant Chris J. Mollet, Esq., is Associate University Counsel and supervises the operations of University of Illinois Self-Insurance Plan for General and Professional Liability, the captive insurer of UIMCC as well as the operations of the Claims Management functions as they relate to medical negligence claims.

12. Defendant Thomas R. Bearrows, Esq. is University Counsel and is the general legal officer of the Board of Trustees and the University and serves as legal adviser to the Board of Trustees. He supervises Chris J. Mollet and, among other things, has final responsibility for the University of Illinois Self-Insurance Plan for General and Professional Liability. He also recommends to the Board of Trustee of the University of Illinois the settlement of claims of medical negligence.

13. Defendant Christine Flaningam, is a Staff Secretary, University of Illinois Board of Trustees, and, upon information and belief, works, from time to time, under the supervision and direction of Thomas R. Bearrows and Patricia Kale.

14. Defendant Michael Trucco, Esq. is an attorney at law and, from time to time, is an employee of or retained counsel for the Board of Trustees of the University of Illinois. He is closely supervised and directed in his work by Chris J. Mollet and Thomas R. Bearrows.

15. Defendant, The University of Illinois is a public corporation, the formal corporate name of which is "The Board of Trustees of the University of Illinois." This corporation operates, among other functions, the University of Illinois College of Medicine and UIMCC.

## **FACTS**

16. The First Amendment to the United States Constitution provides as follows:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 6 of 47

This Amendment protects the right of citizens, including public employees to speak out and further protects the right of public employees to speak out consistent with their employment duties.

17. The Fifth Amendment to the United States Constitution provides as follows:

> "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

This Amendment protects the rights of citizens, including public employees from the deprivation of liberty and property interests without procedural and substantive Due Process of law.

18. The Eighth Amendment to the United States Constitution provides as follows:

> "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

This Amendment protects the rights of citizens, including public employee, to trial on the merits of a claim made against such person and further protects such person's right to trial by jury.

19. The Fourteenth Amendment to the United States Constitution makes the provisions of the Bill of Rights, including the First, Fifth, and Eighth Amendments applicable to the states including the State of Illinois and provides in part:

> "1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

This Amendment provides for the rights of citizens, including public employees, to Due Process and Equal Protection of the laws.

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 7 of 47

20.  The regulations of the Board of Trustees of the University of Illinois, adopted and referred to as "University of Illinois Statutes" contain a Non-discrimination Statement, adopted May 31, 2005  which was in full force and effect at all times material hereto, which provided:

> "The University of Illinois will not engage in discrimination or harassment against any person because of race, color, religion, national origin, ancestry, age, marital status, disability, sexual orientation including gender identity, unfavorable discharge from the military or status as a protected veteran and will comply with all federal and state nondiscrimination, equal opportunity and affirmative action laws, orders and regulations. This nondiscrimination policy applies to admissions, employment, access to and treatment in University programs and activities."

This statute reflects the clearly defined policy of the Board of Trustees of the University of Illinois and requires the Board of Trustees of the University of Illinois and all employees acting under color of law on behalf of the University to comply with all federal nondiscrimination laws including the Due Process and Equal Protection provisions of the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

21.  The University of Illinois College of Medicine at Chicago adopted a "Medical Service Plan" and By-Laws for such plan pursuant to 110 ILCS Section 330/5 which provided a manner in which professional fees would be charged and the manner in which such fees would be disbursed.  A complete copy of such Plan By-Laws is attached hereto as Exhibit B.

22.  The By-Laws of the Medical Service Plan provide in Article I, Sections A, B and D for the attainment of the following goals:

A.  To provide an optimum setting in which faculty physicians can practice their clinical skills, thereby furthering the clinical educations programs of the College.

B.  To provide funds for the compensation and fringe benefits necessary to attract and retain College faculty of the highest caliber.

\*\*\*

D.  To support clinical faculty practice and provide a forum for discussion of practice issues.

7

Case 1:08-cv-0..43    Document 1    Filed 07/07/200.    Page 8 of 47

23.  Article VI Section A.1 of the By-Laws provides that all Clinical Department Heads are members of the Board of Directors of the Medical Service Plan.  Plaintiff Dr. Abcarian was at all times material a Clinical Department Head and accordingly, a member of the Board of Directors of the Medical Service Plan.

24.  Article VI Section B of the By-Laws provides that the Board of Directors "shall have the following authorities and responsibilities:

> 1.  To support clinical faculty practice and provide a forum for discussion of practice issues.

> 2.   To represent the clinical faculty and to advise the UIC Medical Center on development of health care delivery systems with joint risk-sharing capabilities.

> 3.  To provide and approve, in conjunction with the UIC Medical Center, shared administration services, including planning, marketing, managed care, and other business functions.

> 4.   To represent the clinical faculty and advise the UIC Medical Center, shared administrative services, including planning, marketing, managed care, and other business functions.

> ***

> 7.  To assess departmental MSP accounts based on an annual budged approved by the Board of Directors to support the cost of shared group practice expenses and the cost of group practice development.

> ***

> 9.  To approve all MSP fee schedules."

25. Article IV Section C, 3 of the By-Laws provides in part that:

8

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 9 of 47

"All expenses incurred by the University… in connection with activities which generate or are related to Professional fees…. shall be a liability of the General Account and payable therefrom before the payment of any other expenditures. Such expenses shall include, but not be limited to premiums for or contributions toward professional liability coverage… pursuant to the University Self Insurance Plan… "Faculty Base Salaries" as in Article V below and fringe benefits related thereto; legal fees incurred by the Office of University Counsel; and other consulting expenses."

26.  In view of the foregoing, part of Dr. Abcarian's responsibilities was to participate in decisions of the Board of Directors of the Medical Service Plan regarding fees charged for physician services at UIMCC, expenses payable from such fees and to advise the UIC Medical Center on development of health care delivery systems with joint risk-sharing capabilities.

27.  Over the last several years, Patricia Kale, Director, University Office of Risk Management has appeared before the Board of Directors of the Medical Service Plan for the purpose of advocating and obtaining payment of premiums for or contributions towards professional liability coverage for members of the Medical Service Plan. Such payments come from fees generated by the physicians who are members of the medical staff at UIMCC.  At a number of these meetings which have occurred over the past several years, Ms. Kale has sought ever increasing contributions from the professional fees collected by the physicians for payment of premiums for or contributions toward professional liability coverage.

28.  Plaintiff Dr. Abcarian, as a member of the Board of Directors of the MSP and in the exercise of his Free Speech on matters of public concern, has voiced his opposition to such increasing payments and demanded explanation of the reason for the rising costs for professional liability insurance when premiums for medical malpractice coverage in the State of Illinois to other physicians from private insurers, primarily the Illinois State Medical Society captive insurer, ISMIE Mutual Insurance Company, have been decreasing for such insurance coverage.  In addition, other private insurance companies are selling policies of professional liability insurance (medical malpractice policies) to physicians in the State of Illinois.  Whereas a number of years ago, during the so-called "malpractice crisis" commercial insurance companies were withdrawing from the Illinois marketplace, so that primarily only ISMIE Mutual Insurance Company was willing to write malpractice insurance policies in Illinois,  there are now

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 10 of 47

approximately a dozen commercial insurance companies selling medical malpractice insurance coverage in the State of Illinois.

29.    Dr. Abcarian has made repeated and vociferous objections in discharge of his responsibilities to the Medical Service Plan and in exercise of his rights to Free Speech on matters of public concern under the First Amendment to the demands for increased premiums for or contributions towards professional liability coverage for members of the Medical Service Plan.  As a result thereof, a number of heated personal confrontations took place between Dr. Abcarian and Patricia Kale over this issue at, among other places, meetings of the Board of Directors of the Medical Service Plan.

30.  In addition to the foregoing, Dr. Timothy McDonald, who works with Patricia Kale in regard to Risk Management issues, has voiced his opposition to Dr. Abcarian's position and his support for Patricia Kale.  In addition, a personal animosity existed on the part of Dr. Timothy McDonald toward Dr. Abcarian because Dr. Abcarian was instrumental in seeking to have him removed from the Operating Room Committee, a Committee of the Medical Staff of UIMCC responsible for the conduct of the operating room.  Dr. Abcarian advocated the removal of Dr. McDonald from the Operating Room Committee because of Dr. McDonald's disruptive effect upon meetings of the Committee.

31.  Additionally, Dr. Abcarian in the exercise of his Free Speech on matters of public concern, has had personal confrontations with Dr. McDonald over Risk Management and Safety issues including the issue of whether clinical privileges, including operating room privileges, should be suspended for physicians who are impaired by their abuse of prescription drugs.  Dr. McDonald has been indifferent to this issue which is an issue of substantial concern to Dr. Abcarian inasmuch as it directly relates to patients' safety.

32.  Further, Dr. Abcarian in the exercise of his Free Speech on matters of public concern, has had numerous confrontations with William H. Chamberlin, Jr. M.D., on issues of Risk Management, faculty recruitment, compensation and fringe benefits, and obstruction by the management of UIMCC to numerous needed changes and the timing of the implementation of

such changes and the allocation of costs to shared administrative expenses, including medical malpractice insurance premiums and reserves.

33.   Against this background of animosity on the part of Risk Management personnel towards Dr. Abcarian because of his objections to escalating costs assessed against the professional fees for insurance expenses and contributions and his concern about Risk Management and patients' Safety issues, the claim of David Behzad in relation to the death of his father, John Behzad, provided a welcomed opportunity for Patricia Kale, Timothy McDonald, M.D. and William H. Chamberlin, Jr. M.D., operating under the color of law, to retaliate against Dr. Abcarian for his exercise of his rights to Free Speech and the discharge of his duties as a member of the Board of Directors of the MSP to support clinical faculty practice and provide a forum for discussion of practice issues and to represent the clinical faculty and to advise the UIC Medical Center on development of health care delivery systems with joint risk-sharing capabilities and on issues of shared administrative expenses.  John Behzad was an out-patient at UIMCC whom Dr. Abcarian had treated for a condition unrelated to his death.

34.   David Behzad is a convicted felon. At all times material hereto, he was also under indictment for drug and gun related felony charges.  As such, he was statutorily ineligible pursuant to Illinois law to serve as administrator of his father's estate; nevertheless, he procured his appointment as Administrator of his father's estate through means of a fraudulent affidavit in an Estate opened in the Probate Division of the Circuit Court of Cook County.  755 ILCS 5/9.1 of the Probate Act provides that in order to qualify as Administrator, a candidate must be a person who "has not been convicted of a felony." David Behzad was statutorily ineligible to serve as Administrator of his father's estate.

35.   On or about July 8, 2005, Kathleen T. Zellner as attorney for the family of John Behzad, sent a letter to Dr. Abcarian advising that she represented the family in a "potential wrongful death lawsuit against [Dr. Abcarian]."  Dr. Abcarian promptly forwarded that letter to William Chamberlin, M.D., Chief Medical Officer of UIMCC, who, on or before July 12, 2005, forwarded the letter to Nikki Centomani, Director of Safety and Risk Management UIMCC, to start the evaluation process.

Case 1:08-cv-03843   Document 1   Filed 07/07/2008   Page 12 of 47

36. From that point forward, a conspiracy was undertaken by the various Defendants herein as more fully described hereinafter with the malicious intent and purpose of discrediting, embarrassing and humiliating Dr. Abcarian, damaging his professional reputation and causing him acute mental distress. Upon information and belief, Nikki Centomani immediately brought the letter concerning Dr. Abcarian to the attention of Timothy McDonald, M.D.

37. From that point forward, the conspiracy and plot to discredit Dr. Abcarian moved forward in secret. The details of the conspiracy are not known to Dr. Abcarian but upon information and belief William H. Chamberlin, Jr. M.D., Nikki Centomani, Timothy McDonald, M.D. and Patricia Kale and other defendants named herein conspired to bring about a settlement of a non-meritorious medical negligence claims against Dr. Abcarian so that such settlement could be reported to the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation and the National Practitioner Data Bank for the purpose of discrediting, embarrassing and humiliating Dr. Abcarian, damaging his professional reputation and causing him acute mental distress.

38. At all times material hereto, Dr. Abcarian had a well recognized constitutionally protected right to his good name and professional reputation and the right to be free from the intentional infliction of mental distress.

39. The Illinois Department of Financial and Professional Regulation, Division of Professional Regulation has jurisdiction over a physician's license to practice medicine and can suspend or revoke a physician's license as a result of his negligence in the practice of medicine pursuant to 225 ILCS 60/22.

40. The National Practitioner Data Bank is a data repository established under 42 U.S.C. Sec 11101 et seq. for, among other purposes, the reporting and dissemination of information regarding medical malpractice settlements, judgments and payments in relation to specific physicians.

41. Upon information and belief, William H. Chamberlin, Jr. M.D., Nikki Centomani and Timothy McDonald, M.D., acting as conspirators in concert, directed Stuart Allen, Claims

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 13 of 47

Manager and Barbara McColgin, Claims Analyst from the Claims Management Office of the University of Illinois Self-Insurance Plan for General and Professional Liability to omit from all evaluation reports of the Behzad claim any information which would exculpate or tend to exculpate Dr. Abcarian from liability for malpractice and they did so.

42. Prior to June 13, 2006 no lawsuit had been filed against Dr. Abcarian in connection with the medical negligence claim on behalf of the Estate of John J. Behzad.

43. Upon information and belief, the committee which considered settlement of medical negligence claims against physician staff members of UIMCC consisted of William H. Chamberlin, Jr., M.D., Chairman, Timothy McDonald, M.D., Patricia Kale, Nikki Centomani, Stuart Allen, Barbara McColgin and Chris J. Mollet. Upon information and belief such committee consisting of those members met and recommended to The Board of Trustees of the University of Illinois settlement of the Behzad claim.

44. Prior to June 13, 2006 upon information and belief, the Defendants herein with the exception of Michael Trucco, also recommended and agreed to a payment of $950,000.00 to "David Behzad, Individually and as Independent Administrator of the Estate of John J. Behzad, Deceased," in settlement of all claims against "The Board of Trustees of the University of Illinois, it employees, agents, servants, and students, their heirs, executors, administrators and assigns, of and from any and all actions, claims, demands, damages, costs, expenses and compensation on account of, or in any way growing out of injuries claimed to have been sustained on or about June 7, 2003 through and including February 4, 2005."

45. The terms of the settlement aforesaid were incorporated in a Release and Indemnity Agreement which David Behzad executed on June 13, 2006 and which contained the foregoing language and which also provided: "this is a full and complete release for all injuries and damages which the undersigned claims to have sustained or will sustain by reason of the above, whether said damages are now known or hereafter become known, including all present damages and all future developments therefrom." A copy of such Release is attached hereto as Exhibit C.

46.  Upon information and belief, at the direction of Stuart Allen or Barbara McColgin or some other unknown conspirator, in furtherance of the conspiracy, on June 13, 2006, Kathleen Zellner filed a lawsuit styled as DAVID BEHZAD, as Special Administrator for the Estate of JOHN BEHZAD, deceased, Plaintiff, vs. HERAND ABCARIAN, M.D., Defendant, No. 06 L 006172.

47.  Upon information and belief, Ms. Zellner was directed by Stuart Allen or Barbara McColgin or some other unknown conspirator, to file such lawsuit even though there had been a complete resolution of all claims of medical negligence relating to John J. Behzad.  The lawsuit was filed in furtherance of the conspiracy to discredit Dr. Abcarian and for the purpose of obtaining an unfavorable judicial resolution of a medical negligence claim against Dr. Abcarian for the purpose of using the resolution of the lawsuit for the purpose of discrediting, embarrassing and humiliating Dr. Abcarian, damaging his professional reputation and causing him acute mental distress.

48. In prosecuting the lawsuit, David Behzad obtained an order appointing him Special Administrator of the Estate of John Behzad.  The Illinois Wrongful Death Act provides in part at 740 ILCS 180/2.1 that the court may appoint a special administrator to conduct a wrongful death action where the cause of action is the sole asset of the estate *"and no petition for letters of office for his or her estate has been filed."*  Because a Petition for Administration of the Estate of John Behzad had already been filed, the appointment of David Behzad as Special Administrator was void and the lawsuit was a nullity.

49.  Upon information and belief, Ms. Zellner was directed not to have a summons issued and not to obtain service of process upon Dr. Abcarian but instead was directed by Stuart Allen or Barbara McColgin or some other unknown conspirators to represent to the trial court that the case had been settled and to obtain an order of dismissal with prejudice of the claim against Dr. Abcarian.

50.  The intent of the Defendant conspirators in obtaining the order of dismissal with prejudice was to foreclose Dr. Abcarian's rights to Due Process to contest the claim and for the purpose of discrediting, embarrassing and humiliating Dr. Abcarian, damaging his professional reputation and causing him acute mental distress.

Case 1:08-cv-໐໐໐43    Document 1    Filed 07/07/200໐    Page 15 of 47

51.  On July 6, 2006, Ms. Zellner, without notice to or the knowledge of Dr. Abcarian that any case had ever been filed or that any settlement had ever been agreed to, upon information and belief, acting at the direction of Stuart Allen or Barbara McColgin or some other unknown conspirator, in furtherance of the conspiracy, obtained an order of court which approved the settlement of the case and dismissed the case with prejudice, thereby foreclosing Dr. Abcarain's right to contest the merits of the claim made against him.  Dr. Abcarian did not become aware of the dismissal order for more than 30 days after its entry and such order became a final order 30 days after entry.

52.  In fact, because all potential claims arising out of the death of John J. Behzad had been settled prior to the filing of the lawsuit, the lawsuit was a fraud and a sham perpetrated at the instance and direction of Stuart Allen or Barbara McColgin or Nikki Centomani or Timothy McDonald, M.D., or William H. Chamberlin, Jr., M.D., or some other unknown conspirators for the purpose of discrediting, embarrassing and humiliating Dr. Abcarian, damaging his professional reputation and causing him acute mental distress.

53.  On July 13, 2006, Thomas R. Bearrows, University Counsel, recommended to the Board of Trustees the approval of the settlement of the claim on behalf of John J. Behzad in the sum of $950,000.00 and the Board approved such settlement. This act also furthered the conspiracy.

54.  Contemporaneously with actions of the conspirators to induce the filing of the lawsuit against Dr. Abcarian and its dismissal with prejudice without his knowledge, a true case of medical malpractice occurred at UIMCC involving a bowel perforation during a surgical procedure ultimately leading to the death of Julius Izquierdo.  Mr. Izquierdo died on June 28, 2006.  Dr. Abcarian was not involved in the treatment of this patient.

55.  On September 7, 2006 Thomas R. Bearrows, University Counsel recommended to the Board of Trustees, of which he is an officer, approval of the settlement of that case in the amount of $6,750,000.00.  No lawsuit making a claim on behalf of the Estate of Julius Izquierdo had been filed and no person acting on behalf of the University of Illinois required a lawsuit to be filed in connection with this case to provide a basis for its settlement or for any other reason.  The

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 16 of 47

settlement of this case was approved by an order of the Probate Division of the Circuit Court of Cook County, Illinois without a lawsuit ever having been filed.

56.   Although 42 U.S.C. sec. 11131 required that the settlement of the Izquierdo claim be reported to the National Practitioner Data Bank by the Trustees of the University of Illinois or the University of Illinois Liability Self-Insurance Plan, or UIMCC, no such report was ever made.

57.   Upon information and belief, the surgeon responsible for the death of Julius Izquierdo was allowed to resign his position at UIMCC and from the faculty of the University of Illinois College of Medicine without being reported to the National Practitioner Data Bank, contrary to law, even though, upon information and belief, the investigation of his conduct revealed medical negligence leading to the death of Julius Izquierdo and other wrongdoing and misconduct by the surgeon.

58.   42 U.S.C. sec. 11133 requires that "a health care facility which accepts the surrender of clinical privileges of a physician (i) while the physician is under an investigation by the entity relating to possible incompetence or improper professional conduct or (ii) in return for not conducting such an investigation or proceeding" report such occurrence and the physician involved to the National Practitioner Data Bank.  Upon information and belief, no such report was ever made.

59.   Upon information and belief, Timothy McDonald, M.D. and William H. Chamberlin, Jr., M.D., were the persons who arranged for the resignation of the surgeon responsible for the death of Julius Izquierdo in exchange for not reporting the surgeon to the National Practitioner Data Bank.

60.   Upon information and belief, on July 27, 2006 Timothy McDonald, M.D., with the concurrence and assistance of William H. Chamberlin, Jr., M.D., in furtherance of the conspiracy, appeared as guests before the Executive Committee of the Medical Service Plan Board of Directors and presented "malpractice cases to be considered for the National Practitioner Data Bank."  Dr. Abcarian was excused from that portion of the meeting of the

Case 1:08-cv-0    43    Document 1    Filed 07/07/200    Page 17 of 47

Executive Committee on July 27, 2006. The cases presented by Timothy McDonald, M.D. and William H. Chamberlin, Jr., M.D. for consideration for reporting or not reporting to the National Practitioner Data Bank were the Behzad case and the Izquierdo case.

61. It was not a function of the Executive Committee to review or approve malpractice cases to be considered for reporting to the National Practitioner Data Bank. No such function is specified in the By-Laws of the Medical Service Plan. In the seventeen years Dr. Abcarian has been a member of the Board of Directors of the MSP, the By-Laws have never provided a malpractice case review function for the MSP.

62. Upon information and belief, the appearance of Timothy McDonald, M.D. and William H. Chamberlin, Jr., M.D., before the Executive Committee was with the intent and purpose of securing the approval of the Executive Committee to report Dr. Abcarian to the National Practitioner Data Bank and not to report the other surgeon responsible for the death of Julius Izquierdo.

63. The Executive Committee of the MSP took no action in regard to such cases as reported by Timothy McDonald, M.D. The appearance of Timothy McDonald M.D. and William H. Chamberlin, Jr., M.D., before the Executive Committee on July 27, 2006, to the best of Dr. Abcarian's knowledge, is the only appearance ever made by anyone to attempt to secure approval of the MSP for the reporting of a physician to the National Practitioner Data Bank.

64. Despite the refusal of the Executive Committee of the MSP to approve the reporting of Dr. Abcarian to the National Practitioner Data Bank, nevertheless, upon information and belief, and in furtherance of the conspiracy by the Defendants herein, except Michael Trucco, to discredit Dr. Abcarian, on August 2, 2006 Christine Flaningam, staff secretary, University of Illinois Board of Trustees, a Defendant herein, upon information and belief acting pursuant to the directions of Thomas R. Bearrows or Patricia Kale or Timothy McDonald, M.D. or William H. Chamberlin, Jr., M.D., or some or all of them, falsely and acting knowingly, intentionally, with actual malice and malice and in bad faith, reported to the National Practitioner Data Bank that a settlement of a medical negligence claim had been made on behalf of Herand Abcarian, M.D. in the amount of $950,000.00 as the result of a failure to perform a colonoscopy. Such report was

Case 1:08-cv-0 43   Document 1   Filed 07/07/200   Page 18 of 47

wholly false and fraudulent because no settlement of any such medical negligence claim was made by or on behalf of Dr. Abcarian and because Dr. Abcarian did not fail to perform a colonoscopy. Additionally, the medical treatment of John Behzad by Herand Abcarian, M.D. did not result in Behzad's death.

65. Upon information and belief, in furtherance of the conspiracy by the Defendants, except Michael Trucco, to discredit Dr. Abcarian, on August 11, 2006 Patricia Kale, Director of the University Office of Risk Management and a Defendant herein, at the direction of and in conspiracy with Timothy McDonald, M.D., William H. Chamberlin, Jr., M.D., and Thomas R. Bearrows falsely and acting knowingly, intentionally, with actual malice and malice and in bad faith, reported to the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation that a settlement of a medical negligence claim had been made on behalf of Herand Abcarian, M.D. in the amount of $950,000.00 as the result of a failure to timely diagnose cancer and that this resulted in the death of John Behzad. Such report was wholly false and fraudulent because no settlement of any such medical negligence claim was made by or on behalf of Dr. Abcarian. Additionally, the medical treatment of John Behzad by Herand Abcarian, M.D. did not result in Behzad's death.

66. Upon information and belief, it is the custom and practice of The Board of Trustees of the University of Illinois and UIMCC not to report to the Illinois Department of Financial and Professional Regulation or to the National Practitioner Data Bank the settlement of malpractice claims arising or allegedly arising out of the errors and omissions committed by physicians on the medical staff of UIMCC and that settlement of such cases is made by and in the name of the Board of Trustees of the University of Illinois so as to obviate the necessity of such reporting.

67. Although Dr. Abcarian requested from Defendant Patricia Kale and Jennie Fontaine, Public Information Officer of UIMCC on or about March 17, 2007 information regarding settlement of other cases of alleged medical negligence and the reporting thereof by means of a Freedom of Information Act request pursuant to 5 ILCS 140/1 et. seq., the Illinois Freedom of Information Act, such request was denied. Dr. Abcarian's counsel appealed the denial of the requested to The Board of Trustees of the University of Illinois on or about May 2, 2007. A copy of such

Case 1:08-cv-᠊   ᠊43     Document 1     Filed 07/07/200᠊     Page 19 of 47

request, which was also sent to the Chairman of the Board of Trustees and the Chairman of the Legal Affairs Committee of the Board of Trustees, is attached hereto as Exhibit D.   The President of the Board of Trustees denied such appeal.

68.  By means of the letter of May 2, 2007, The Board of Trustees of the University of Illinois was made fully aware of the nature and extent of the conspiracy to discredit Dr. Abcarian and to falsely report him to the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation and the National Practitioner Data Bank.  In the event that The Board of Trustees of the University of Illinois previously had been unaware of the nature and extent of the conspiracy, it became fully cognizant of the conspiracy but took no action to halt it, thereby adopting the actions of the conspirators as the official policy of the Board of Trustees.

69.  Based upon the denial of the requested information as to the reporting or non-reporting of other settlements of alleged medical negligence cases, Dr. Abcarian has reason to believe that the false report of the settlement of the claim against him is the only occasion when The Board of Trustees of the University of Illinois has reported the alleged settlement of a claim of medical negligence to the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation or the National Practitioner Data  Bank.  Accordingly, the treatment of him by The Board of Trustees of the University of Illinois is grossly disparate and unequal, particularly considering the report of the alleged settlement of his case was false and fraudulent and, by way of example, upon information and belief, the actions of the surgeon involved in the death of Julius Izquierdo should have been reported to the Illinois Department of Financial and Professional Regulation and the National Practitioner Data Bank but were not.

70.  On or about August 3, 2006, the National Practitioner Data Bank sent correspondence to Dr. Abcarian advising him that action had been taken against him and demanding that he provide a response to the report that a settlement of a medical malpractice case had been made on his behalf.

71.  Upon information and belief, the reports contained in the National Practitioner Data Bank concerning settlements on behalf of physicians are accessible at least to state licensing boards, to hospitals, and to other health care entities (including health maintenance organizations) that have

Case 1:08-cv-0__43   Document 1   Filed 07/07/200o   Page 20 of 47

entered (or may be entering) into an employment or affiliation relationship with the physician or practitioner or to which the physician or practitioner has applied for clinical privileges or appointment to the medical staff for an indefinite period of time and until modified or removed.

72.  In view of the foregoing, in the event that Dr. Abcarian ever applies for employment or staff privileges at any health care institution, the false report of the settlement of the Behzad claim will be available to any health care institution for examination.  This will result in further acute embarrassment to Dr. Abcarian and the potential declination by such health care facility to grant privileges or to employ Dr. Abcarian. Dr. Abcarian has been requested to seek staff privileges at another hospital in Cook County, Illinois and is currently planning to do so.

73.  On or about August 16, 2006, the Medical Disciplinary Board of the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation sent correspondence to Herand Abcarian, M.D. advising him that under Illinois law:

> 1) You **must** send a written statement explaining the facts and circumstances, which led to the filing of this reports.

> 2) **Failure** to respond in writing within 60 days (no extensions) constitutes a violation of the Medical Practice Act and can result in a **fine and/or disciplinary action** against your license.

74.    Upon receipt of the letters from the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation Medical Disciplinary Board and the National Practitioner Data Bank, Dr. Abcarian engaged counsel on his behalf to investigate the claims being made against him.

75.  At that time, he had no knowledge that any lawsuit had ever been filed against him on behalf of the Estate of John Behzad.

76.  The ensuing investigation revealed the existence of a lawsuit in the Circuit Court of Cook County, Illinois, County Department, Law Division, styled as DAVID BEHZAD, as Special Administrator for the Estate of JOHN BEHZAD, deceased, Plaintiff, vs. HERAND

Case 1:08-cv-0⌐ +3    Document 1    Filed 07/07/2008    Page 21 of 47

ABCARIAN, M.D., Defendant, No. 06 L 006172.  The investigation further revealed that no summons had ever been placed for service and that no appearance had ever been filed on behalf of Dr. Abcarian.  Additionally, the lawsuit revealed the existence of the order of July 6, 2006 dismissing the lawsuit with prejudice.  All of these facts were unknown to Dr. Abcarian prior to this investigation.

77.  Dr. Abcarian suffered and suffers acute mental distress, embarrassment and humiliation by reasons of the lawsuit filed against him and the false reports of settlement made to the National Practitioner Data Bank and the Illinois Department of Financial and Professional Regulation.  He was acutely embarrassed by having to ask a professional peer to review the sham case brought against him and to provide his opinion as to whether Dr. Abcarian committed medical negligence.  Dr. Abcarian continuously fears that the false reports about him could be resurrected at some future time, particularly when he might apply for medical staff privileges at another health care institution, further invading his privacy and damaging his otherwise excellent reputation.  He has lost considerable sleep and incurred great worry and mental anguish as a result of these false reports and filings.

78. After receipt of the letters from the Illinois Department of Financial and Professional Regulation and the National Practitioner Data Bank and after learning of the existence of the Behzad lawsuit, Dr. Abcarian then reported these facts to Truman Anderson, M.D., Vice-Dean of the University of Illinois College of Medicine who also had no knowledge of the foregoing. Dr. Anderson arranged for a meeting among Dr. Abcarian, his counsel, Dr. Anderson, Chris J. Mollet and Stuart Allen to determine if mistakes had been made, how the lawsuit came about, how the lawsuit had been settled if indeed such had occurred and how to correct the record both in the Circuit Court of Cook County and with the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation, Medical Disciplinary Board and the National Practitioner Data Bank.

79.  A meeting took place on October 9, 2006 involving Dr. Abcarian, his counsel, Dr. Anderson, Chris J. Mollet and Stuart Allen as arranged by Dr. Anderson.  Although requested by Dr. Abcarian's counsel, Christ J. Mollet refused to take any action to correct the record in the

Case 1:08-cv-0\_\_43    Document 1    Filed 07/07/200\_    Page 22 of 47

Circuit Court of Cook County, Illinois or with the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation Medical Disciplinary Board and the National Practitioner Data Bank. If Chris J. Mollet had no prior knowledge of the conspiracy to discredit Dr. Abcarian, he joined in and subscribed to the conspiracy at that time by refusing to intervene to stop the misconduct.

80. On or about October 12, 2006, Dr. Abcarian's counsel filed a Petition to Vacate the Order of July 6, 2006 Pursuant to 735 ILCS 2-1401(f) in order to have the opportunity to contest the merits of the claim which was made against him. The Petition asked that the order of dismissal with prejudice be vacated, that the settlement be vacated, that the settlement funds be returned to the Board of Trustees of the University of Illinois and that Dr. Abcarian have his due process rights to contest the claim made against him. At the time of the filing of the Petition to Vacate, Dr. Abcarian was unaware that the terms of the settlement agreement and release had fully released all claims in connection with the death of John Behzad prior to the filing of the lawsuit against Dr. Abcarian.

81. In support of said Petition to Vacate, Dr. Abcarian filed the Affidavit of David Schoetz, M.D., an independent physician exceedingly well qualified in the field of colo-rectal surgery attesting to the lack of merit of the claim which had been made on behalf of the Estate of John Behzad. Dr. Schoetz was and is a professional peer of Dr. Abcarian and Dr. Abcarian was embarrassed professionally in soliciting his opinion of Dr. Abcarian's conduct.

82. On or about October 14, 2006, Dr. Abcarian's counsel informed the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation, Enforcement Administration Unit that the report of the resolution of the Behzad case had been improperly made and that Dr. Abcarian was in the process of seeking to have the case reopened so that he could defend himself.

83. Subsequent thereto, on October 17, 2006, Dr. Abcarian's counsel made formal demand upon Chris J. Mollet and the Trustees of the University of Illinois to correct the record in the Circuit Court of Cook County, Illinois, and to rectify the false and improper reports to Illinois

Case 1:08-cv-03843     Document 1     Filed 07/07/2008     Page 23 of 47

Department of Financial and Professional Regulation, Division of Professional Regulation Medical Disciplinary Board and the National Practitioner Data Bank.

84. Dr. Abcarian's counsel also demanded that the University of Illinois Self-Insurance Plan pay the legal expenses Dr. Abcarian incurred in his efforts to correct the record, have the judgment vacated and have the reports to Illinois Department of Financial and Professional Regulation, Division of Professional Regulation Medical Disciplinary Board and the National Practitioner Data Bank withdrawn. Such request for reimbursement was fully justified by Illinois case law regarding irreconcilable conflicts of interest between insurers and insured and the fiduciary duties of insurers.

85. In response thereto, in furtherance of the conspiracy, Chris J. Mollet, and, upon information and belief, Thomas R. Bearrows acting under color of law on behalf of The Board of Trustees of the University of Illinois, engaged the services of Michael Trucco to resist any attempt by Dr. Abcarian to reopen the lawsuit in the Circuit Court of Cook County and defend the claim made against him.  By such action supporting the conduct of the conspirators, Chris J. Mollet and Thomas R. Bearrows and The Board of Trustees of the University of Illinois, if they had not previously been conspirators, ratified the wrongful conduct aforesaid and joined in and fully endorsed all the goals of the conspiracy to embarrass and discredit Dr. Abcarian and to cause him intentional and acute mental distress and to cause him to incur substantial expense in responding to investigations of his license and status to practice medicine, including the expense of the legal effort to clear the record in the Circuit Court of Cook County, Illinois.

86. On or about February 21, 2007, after contacting the National Practitioner Data Bank and advising the Bank of the true facts related to the false report of a settlement on Dr. Abcarian's behalf, Dr. Abcarian wrote to Christine Flaningam and advised her that the National Practitioner Data Bank had instructed him that "Any corrections or modifications to a report maintained by the Data Banks must be submitted by the entity that submitted the report." Dr. Abcarian demanded that Christine Flaningam withdraw the report but she, in furtherance of the conspiracy, failed or refused to do so.

23

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 24 of 47

87.  On or about February 21, 2007, Dr. Abcarian wrote to Patricia Kale and stated the following:

> " Demand is hereby made upon you that you advise the Illinois Department of Financial and Professional Regulation that the settlement of the case was made without my knowledge, authorization, approval or consent, that the settlement was erroneous and that you now regard the claim to be without merit.  I am unable to correct the damage that you have done to my reputation with your report of because the corrective request must come from you."

Patricia Kale, in furtherance of the conspiracy, failed or refused to so advise the Illinois Department of Financial and Professional Regulation.

88.  On or about March 15, 2007, Michael Trucco acting in furtherance of the conspiracy and under the direction and control of Chris J. Mollet and Thomas R. Bearrows filed a Petition to Intervene on behalf of the Board of Trustees of the University of Illinois and a Motion to Dismiss Dr. Abcarian's Petition to Vacate the Order of July 6, 2006, thereby attempting to foreclose Dr. Abcarian's right to reopen the Behzad lawsuit and obtain his Due Process right to trial by jury on the issues.

89.  All though the Estate of John Behzad was properly served with Dr. Abcarian's Petition to Vacate and although Kathleen Zellner, the attorney for the Estate, was ordered to appear and respond to the Petition, and she did appear, she never contested the affidavit of Dr. David Schoetz which had established the lack of merits of the claim made on behalf of the Estate of John Behzad.  Accordingly, by default, David Behzad admitted that the claim which he had prosecuted was without merit.

90.  During the pendency of the Petition to Vacate, Dr. Abcarain's counsel made an offer The Board of Trustees through Michael Trucco to withdraw that portion of Dr. Abcarian's Petition to Vacate which sought the return of the $950,000.00 settlement funds to the Board of Trustees of the University of Illinois, provided that the Board of Trustees of the University of Illinois agree to the waiver of such claim for return of the funds and further agree not to contest the Petition to Vacate.

91.  The Board of Trustees of the University of Illinois acting through Michael Trucco and apparently with the knowledge, consent and approval of Thomas R. Bearrows, and in furtherance

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 25 of 47

of the conspiracy, refused Dr. Abcarian's offer, thereby reiterating its purpose of damaging Dr. Abcarian's professional reputation and intentionally causing him acute mental distress.

92. Michael Trucco and the Board of Trustees of the University of Illinois upon information and belief, acting with the knowledge, consent and approval of Thomas R. Bearrows, in furtherance of the conspiracy, vigorously sought to intervene in Dr. Abcarian's Petition to Vacate and sought the dismissal of the Petition to Vacate, thereby attempting forever to foreclose Dr. Abcarian of the exercise of his right to Due Process and a trial by jury.  This action was purposeful, intentional and malicious and in bad faith and done for the express purpose of inflicting additional harm upon  Dr. Abcarian.

93. On April 18, 2007, the Circuit Court of Cook County, Illinois, over the strenuous objection of Michael Trucco on behalf of the Board of Trustees of the University of Illinois, entered an order which vacated the order dismissing the Behzad case with prejudice.  Kathleen Zellner, counsel for the Estate of John Behzad then immediately orally moved for leave to dismiss the case with prejudice to any right of the Estate to re-file the case and the court granted such motion on April 18, 2007.  Accordingly, there was no possibility of an adverse judgment ever being entered against Dr. Abcarian because the record established that the claim against Dr. Abcarian was permanently abandoned by the Plaintiff and could not be reinstated

94. On or about April 18, 2007 Plaintiff wrote to Christine Flaningam, staff secretary, University of Illinois Board of Trustees, a Defendant herein, and provided her with a copy of the order of the Circuit Court of Cook County, Illinois of April 18, 2007 which vacated the order dismissing the case with prejudice and dismissed the case with prejudice upon motion of Kathleen Zellner, counsel for David Behzad, thereby precluding an adverse judgment from ever being entered against Dr. Abcarian.  Dr. Abcarian wrote:

> " … demand is made upon you to advise the National Practitioner Data Bank that the report you made about a case against me being settled was erroneous and that there is no settlement of a case against me. Further, demand is made upon you that you advise the National Practitioner Data Bank."

95. Upon information and belief, in furtherance of the conspiracy to discredit Dr. Abcarian and intentionally and maliciously to cause him acute mental anguish, and acting pursuant to the

Case 1:08-cv-0⌐⌐43    Document 1    Filed 07/07/2008    Page 26 of 47

directions of Thomas R. Bearrows or Patricia Kale or Timothy McDonald, M.D. or William H. Chamberlin, Jr., M.D., or some or all of them to falsely report to the National Practitioner Data Bank that a settlement of a medical negligence claim had been made on behalf of Herand Abcarian, M.D. in the amount of $950,000.00, Christine Flaningam intentionally and maliciously failed or refused to so advise the National Practitioner Data Bank with the intent to further the purposes of the conspiracy and to inflict mental distress upon Dr. Abcarian and to cause him to continue to incur substantial legal expense to repair his damaged reputation.

96.  To the best of Dr. Abcarian's knowledge, the false report submitted by Christine Flaningam remains of record with the National Practitioner Data Bank and is uncorrected.  The continued existence and effect of such false report is reflected in a demand from the State of Florida Department of Health, Division of Medical Quality Assurance on March 20, 2008 for an explanation of why a medical negligence case had been filed and settled against Dr. Abcarian and why he had not reported it to the State of Florida Department of Health, Division of Medical Quality Assurance.

97.  Dr. Abcarian was obligated to and did incur legal expense in responding to the demand from the State of Florida Department of Health, Division of Medical Quality Assurance. Dr. Abcarian accordingly continues to suffer acute mental distress intentionally inflicted through the actions of Defendants herein.

98.  Because there has been no resolution of these false and fraudulent reports, and because the persons responsible for making the reports refuse to rescind them, Dr. Abcarian has ongoing acute mental distress concerning the status of his license to practice medicine and earn a livelihood and continues to be exposed to legal expense in connection with these false reports.

99.  On or about April 18, 2007 Plaintiff wrote to Patricia Kale, Director, University Office of Risk Management, University of Illinois, a Defendant herein, and provided her with a copy of the order of the Circuit Court of Cook County, Illinois of April 18, 2007 which vacated the order dismissing the case with prejudice and dismissed the case with prejudice upon motion of Kathleen Zellner, counsel for David Behzad, thereby precluding an adverse judgment from ever being entered against Dr. Abcarian.  Dr. Abcarian wrote:

Case 1:08-cv-0___43    Document 1    Filed 07/07/2008    Page 27 of 47

"... demand is made upon you to advise the Illinois Department of Financial and Professional Regulation that the report you made about a case against me being settled was erroneous and that there is no settlement of a case against me. Further, demand is made upon you that you advise the Illinois Department of Financial and Professional Regulation to remove the report of settlement from its records."

100.  Upon information and belief, in furtherance of the conspiracy to discredit Dr. Abcarian and to cause him acute mental anguish, and acting pursuant to the directions of Thomas R. Bearrows or Timothy McDonald, M.D. or some or both of them to falsely report to the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation that a settlement of a medical negligence claim had been made on behalf of Herand Abcarian, M.D. in the amount of $950,000.00, Patricia Kale intentionally and maliciously failed or refused to so advise the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation with the intent to further the purposes of the conspiracy and to inflict mental distress upon Dr. Abcarian and to cause him to continue to incur substantial legal expense to repair his damaged reputation.

101.  To the best of Dr. Abcarian's knowledge, the false report submitted by Patricia Kale, remains of record with the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation and is uncorrected.

102.  Since Dr. Abcarian is not the originator of the reports to the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation and the National Practitioner Data Bank, he is without the ability to have the reports rescinded or even to know of the continued status of such reports.  He is accordingly without a remedy at law and is in need of an order of this court upon the Board of Trustees of the University of Illinois to rescind and withdraw and correct such false reports.

103.  Dr. Abcarian has been and continues to be irreparably harmed by the actions of the Defendants aforesaid. The refusal of Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq. and The Board Of Trustees of The University of Illinois to withdraw the false reports and to explain the

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 28 of 47

false basis for the reporting to the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation and the National Practitioner Data Bank constitute on-going, continual, intentional, bad faith, malicious acts knowingly perpetrated with actual malice for the specific purpose of causing Dr. Abcarian acute mental anguish, damage his reputation and cause him to be required to continue to spend considerable sums to attempt to restore his good name and reputation. The on-going refusal to withdraw the false reports are acts by Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board Of Trustees of The University of Illinois in furtherance of the conspiracy to harm Dr. Abcarian.

## COUNT I
## VIOLATIONS OF 42 U.S.C. 1983: FREE SPEECH ON MATTERS OF PUBLIC CONCERN
## AND DUE PROCESS

104. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 103 above with the same force and effect as if set forth here at in full.

105. At all times materials hereto, the conduct of all Defendants was subject to 42 U.S.C. Section 1983 and the Defendants were acting under color of law.

106. At all times material, Dr. Abcarian had a clearly established right to Free Speech under the First Amendment to the United States Constitution and a duty pursuant to the terms of his membership on the Board of Directors of the Medical Service Plan to speak out on the matters of public concern regarding issues concerning payment of premiums for or contributions towards professional liability coverage for members of the Medical Service Plan and his concern about Risk Management and patients' Safety issues as well as physician discipline, faculty compensation and fringe benefits, and obstruction by the management of UIMCC to numerous needed changes and the timing of the implementation of such changes and the allocation of costs to shared administrative expenses, including medical malpractice insurance premiums and reserves.

107.  At all times material, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board Of Trustees of The University of Illinois had a duty to refrain from retaliating against Dr. Abcarian for his exercise of his rights to Free Speech.

108.  Clearly established principles of case law rendered such conduct as hereinabove described in retaliating against Dr. Abcarian unconstitutional and accordingly, Defendants' conduct in retaliating as aforesaid was not objectively reasonable.  Dr. Abcarian's rights were not vague and amorphous but rather of a fundamental nature and the contours of the rights were sufficiently clear that a reasonable person would understand that what they were doing violated Dr. Abcarian's rights.

109.  In addition, at all times material, Dr. Abcarian had a clearly established, most fundamental procedural Due Process rights to notice and the opportunity to be heard under the Fifth Amendment to the United States Constitution in regard to any claims made against him for medical negligence.

110.  At all times material, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois had a duty not to hinder, obstruct and obscure Dr. Abcarian's rights to notice and an opportunity to be heard in regard to the medical negligence claim.

111.  Clearly established principles of case law rendered such conduct as hereinabove described in retaliating against Dr. Abcarian by denying him fundamental Due Process rights to notice and the opportunity to be heard and by hindering, obstructing and obscuring his rights unconstitutional and accordingly, Defendants' conduct as aforesaid was not objectively reasonable.  Dr. Abcarian's rights were not vague and amorphous but rather of a fundamental nature and the contours of the rights were sufficiently clear that a reasonable person would understand that what they were doing violated Dr. Abcarian's rights.

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 30 of 47

112.  In addition, at all times material, Dr. Abcarian had a clearly established, most fundamental substantive Due Process right to be free under the Fifth Amendment to the United States Constitution from unwarranted intrusions upon his bodily integrity inasmuch as her had the right to be free from the intentional infliction of acute emotional distress by falsely reporting settlement of a medical negligence case to the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation and the National Practitioner Data Bank with the result that his qualifications and license to practice medicine were investigated by the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation, the National Practitioner Data Bank and State of Florida Department of Health, Division of Medical Quality Assurance.

113.  At all times material, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board Of Trustees of The University of Illinois had a duty not to engage in unwarranted intrusion upon Dr. Abcarian's bodily integrity by intentionally inflicting severe emotional distress upon him.

114.  Clearly established principles of case law rendered such conduct as hereinabove described in retaliating against Dr. Abcarian by denying him fundamental substantive Due Process rights to bodily integrity and inflicting upon him severe emotional distress unconstitutional and accordingly, Defendants' conduct as aforesaid was not objectively reasonable. Dr. Abcarian's rights were not vague and amorphous but rather of a fundamental nature and the contours of the rights were sufficiently clear that a reasonable person would understand that what they were doing violated Dr. Abcarian's rights.

115.  At all times material hereto, Dr. Abcarian had the right under the Fifth Amendment to the United States Constitution to be free from being falsely accused of medical malpractice in a false and fraudulent lawsuit filed at the specific instance and behest of Defendants after all possible claims arising out of the death of John Behzad had been settled and compromised.  Such falsely filed lawsuit was a "state created danger" which had the effect of making him vulnerable to acute emotional distress, damaged his professional reputation, causing him economic damages by way

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 31 of 47

of attorney fees and called his license to practice medicine into question by the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation, the National Practitioner Data Bank and State of Florida Department of Health, Division of Medical Quality Assurance. He also had a liberty interest and a property interest in his good name and reputation under the Fifth Amendment to the United States Constitution.

116.  The actions aforesaid were commenced and continued with malice and with actual malice and with the intent to harm Dr. Abcarian in his emotional state and to create a legal plight to which he should not have been subject.  These actions deprived Dr. Abcarian of his liberty interest in his good name, reputation and right to be free from unwarranted intrusions upon his mental status, causing him great mental anguish.

117.  The actions aforesaid of the Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board Of Trustees of The University of Illinois shock the conscious of any reasonable person and sicken a reasonable citizen to realize that public officials and a public corporation of his own government would harass an employee and intentionally engage in such shameful conduct.

118.  Clearly established principles of case law rendered such conduct as hereinabove described in retaliating against Dr. Abcarian by falsely accusing him of medical malpractice in a false and fraudulent lawsuit filed at the specific instance and behest of Defendants after all possible claims arising out of the death of John Behzad had been settled and compromised not objectively reasonable.  Dr. Abcarian's rights were not vague and amorphous but rather of a fundamental nature and the contours of the rights were sufficiently clear that a reasonable person would understand that what they were doing violated Dr. Abcarian's rights.

119.  The submission of a false report of the settlement of a fraudulent medical negligence lawsuit that had no factual or substantive merit and was brought about by contrivance and conspiracy was in bad faith and malicious and in intentional disregard for the laws and rights of Dr. Abcarian without probable cause by Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J.

Case 1:08-cv-03843　　Document 1　　Filed 07/07/2008　　Page 32 of 47

Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University Of Illinois to believe that their actions comported with law.

120. Acting under color of law, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois flagrantly, and with malice and actual malice, without cause and in bad faith, intentionally worked a denial of Dr. Abcarian's rights, privileges or immunities secured by the United States Constitution or by Federal Law, to wit:

> A. By retaliating against him for his exercise of his right of free speech on matters of public concern.

> B. By retaliating against him for the exercise of his duty to speak on matters of public concern as required of him in the exercise of his office as a member of the Executive Committee of the Medical Service Plan.

WHEREFORE, Plaintiff Herand Abcarian, M.D., F.A.C.S., demands judgment for retaliation against him and violating his rights to Due Process against Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois jointly and severally, for actual, general, special, compensatory damages in the amount not less than $500,000.00 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount not less than $100,000.00 plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT II

### VIOLATIONS OF 42 U.S.C. 1983, RIGHT TO TRIAL BY JURY

121. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 103 above with the same force and effect as if set forth here at in full.

Case 1:08-cv-0~~43   Document 1   Filed 07/07/2008   Page 33 of 47

122.   At all times materials hereto, the conduct of all Defendants was subject to 42 U.S.C. Section 1983 and the Defendants were acting under color of law.

123.   At all times material, Dr. Abcarian had a clearly established right to trial by jury pursuant to the Eighth Amendment to the United States Constitution.

124.   At all times material, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board Of Trustees of The University of Illinois had a duty to not to conceal and obstructing Dr. Abcarian's right to trial by jury on the issues maintained against him in the lawsuit in the Circuit Court of Cook County, Illinois, County Department, Law Division, styled as DAVID BEHZAD, as Special Administrator for the Estate of JOHN BEHZAD, deceased, Plaintiff, vs. HERAND ABCARIAN, M.D., Defendant, No. 06 L 006172.

125.   Clearly established principles of case law rendered such conduct as hereinabove described in concealing and obstructing Dr. Abcarian in his right to trial by jury unconstitutional and accordingly, Defendants' conduct in retaliating as aforesaid was not objectively reasonable. Dr. Abcarian's rights were not vague and amorphous but rather of a fundamental nature and the contours of the rights were sufficiently clear that a reasonable person would understand that what they were doing violated Dr. Abcarian's rights.

126. Acting under color of law, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois flagrantly, and with malice and actual malice, without cause and in bad faith, intentionally worked a denial of Dr. Abcarian's rights, privileges or immunities secured by the United States Constitution or by Federal Law, to wit:

> A. Concealed from him the existence of a claim against him in a lawsuit in the Circuit
> Court of Cook County, Illinois, County Department, Law Division, styled as DAVID

Case 1:08-cv-0...-43    Document 1    Filed 07/07/2008    Page 34 of 47

BEHZAD, as Special Administrator for the Estate of JOHN BEHZAD, deceased, Plaintiff, vs. HERAND ABCARIAN, M.D., Defendant, No. 06 L 006172.

B. Covertly obtained a final order in a lawsuit in the Circuit Court of Cook County, Illinois, County Department, Law Division, styled as DAVID BEHZAD, as Special Administrator for the Estate of JOHN BEHZAD, deceased, Plaintiff, vs. HERAND ABCARIAN, M.D., Defendant, No. 06 L 006172 so as to preclude Dr. Abcarian from exercising his rights to trial by jury.

C. Intentionally attempted to continue to obstruct Dr. Abcarian's rights to trial on the merits order in a lawsuit in the Circuit  Court of Cook County, Illinois, County Department, Law Division, styled as DAVID BEHZAD, as Special Administrator for the Estate of JOHN BEHZAD, deceased, Plaintiff, vs. HERAND ABCARIAN, M.D., Defendant, No. 06 L 006172 once Dr. Abcarian learned of the existence of the claim against him and did so by means of a Petition for Leave to Intervene and a Motion to Dismiss Dr. Abcarian's Petition to vacate the order dismissing the cause with prejudice to his right to contest the issues against him.

WHEREFORE, Plaintiff Herand Abcarian, M.D., F.A.C.S., demands judgment for retaliation against him and violating his right to trial by jury against Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois jointly and severally, for actual, general, special, compensatory damages in the amount not less than $500,000.00 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount not less than $100,000.00 plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT III

## VIOLATIONS OF 42 U.S.C. 1983, EQUAL PROTECTION OF THE LAWS

Case 1:08-cv-_843    Document 1    Filed 07/07/200_    Page 35 of 47

127. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 103 above with the same force and effect as if set forth here at in full.

128. At all times materials hereto, the conduct of all Defendants was subject to 42 U.S.C. Section 1983 and the Defendants were acting under color of law.

129. At all times material, Dr. Abcarian had a clearly established right to Equal Protection of the laws and freedom from disparate treatment pursuant to the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. 11131 and 11131 based upon his Free Speech on matters of public concern.

130. At all times material, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board Of Trustees of The University of Illinois had a duty to refrain from retaliating against Dr. Abcarian for his exercise of his rights to Free Speech and a duty to conform their conduct in reporting and not reporting violations of 42 U.S,C. 11131 and 11133 to the requirements of that law.

131. Clearly established principles of case law rendered such conduct as hereinabove described in according Dr. Abcarian disparate treatment in reporting or not reporting allegations of malpractice, settlement and permitted resignation while under investigation as retaliation against Dr. Abcarian unconstitutional and accordingly, Defendants' conduct in retaliating as aforesaid was not objectively reasonable. Dr. Abcarian's rights, including his right not to be falsely reported as having had a settlement or judgment paid on his behalf were not vague and amorphous but rather of a fundamental nature and the contours of the rights were sufficiently clear that a reasonable person would understand that what they were doing violated Dr. Abcarian's rights.

132. Acting under color of law, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois flagrantly, and with malice and actual malice, without

Case 1:08-cv-0....43   Document 1   Filed 07/07/2008   Page 36 of 47

cause and in bad faith, intentionally worked a denial of Dr. Abcarian's rights, privileges or immunities secured by the United States Constitution or by Federal Law, to wit:

A. Falsely reported to the National Practitioner Data Bank that a malpractice case had been settled on his behalf.

B. Failed to report the $6,750.000.00 settlement paid as a result of the death of Julius Izquierdo as the result of a surgeon's negligent perforation of his bowel during surgery.

C. Falsely reported to the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation that a settlement of a medical negligence case had been made on his behalf.

D. Refused and continuously refuses to withdraw the false reports made to the National Practitioner Data Bank and the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation.

WHEREFORE, Plaintiff Herand Abcarian, M.D., F.A.C.S., demands judgment for retaliation against him and violation of his rights to Equal Protection of the laws against Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois jointly and severally, for actual, general, special, compensatory damages in the amount not less than $500,000.00 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount not less than $100,000.00 plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT IV
### VIOLATIONS OF 42 U.S.C. 1986, EQUAL PROTECTION OF THE LAWS

133.  Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 103 above with the same force and effect as if set forth here at in full.

Case 1:08-cv-0..43    Document 1    Filed 07/07/2008    Page 37 of 47

134.  At all times materials hereto, the conduct of all Defendants was subject to 42 U.S.C. Section 1986 and the Defendants were acting under color of law.

135.  At all times material, Dr. Abcarian had a clearly established right to be free from violations of his rights protected by the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

136.  At all times material, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board Of Trustees of The University of Illinois had the power to prevent or aid in the prevention of the violations of the Constitutionally protected rights of Dr. Abcarian and the duty to act to prevent such violation and the duty not to refuse to so act pursuant to 42 U.S.C. 1986.

137.  Despite such duty to act to prevent the violations of Dr. Abcarian's rights, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board Of Trustees of The University of Illinois neglected, failed or refused to do so and continue to so refuse to act to prevent the continuing violations of his rights by refusing to correct the false reports filed with the National Practitioner Data Bank and the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation.

138.  Clearly established principles of case law rendered such conduct as hereinabove described in failing to act to prevent the violation of Dr. Abcarian's rights when they had the power to do so unconstitutional and accordingly, Defendants' conduct in refusing to act as aforesaid was not objectively reasonable.  Dr. Abcarian's rights were not vague and amorphous but rather of a fundamental nature and the contours of the rights were sufficiently clear that a reasonable person would understand that what they were doing violated Dr. Abcarian's rights.

139.  Acting under color of law, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet,

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 38 of 47

Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois flagrantly, and with malice and actual malice, without cause and in bad faith, intentionally worked a denial of Dr. Abcarian's rights, privileges or immunities secured by the United States Constitution or by Federal Law, to wit:

> A. Refusing to act to prevent the violations of Dr. Abcarian's rights at and prior to the time such violations were happening, except as to the failure to correct the false reports which is a violation of a continuing kind, not a one time occurrence.

> B. Refusing on an on-going basis, to correct the false reports filed with the National Practitioner Data Bank and the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation.

140. The on-going premeditated refusal to correct the false reports is intentional, malicious and is a continuing act of actual malice which is so flagrant and deliberate and calculated to inflict acute emotional distress and cause continuing economic damages that it shock the conscious of any reasonable person and sicken a reasonable citizen to realize that public officials and a public corporation of his own government would harass an employee and intentionally engage in such shameful conduct.

WHEREFORE, Plaintiff Herand Abcarian, M.D., F.A.C.S., demands judgment for retaliation against him and violating his right to trial by jury against Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois jointly and severally, for actual, general, special, compensatory damages in the amount not less than $1,000,000.00 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount not less than $500,000.00 plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT V
## VIOLATION OF 42 U.S.C. 1981, EQUAL PROTECTION

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 39 of 47

141. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 103 above with the same force and effect as if set forth herein in full.

142. At all times materials hereto, the conduct of all Defendants were subject to 42 U.S.C. Section 1981.

143. Acting under color of law, Defendants worked a denial of Dr. Abcarian's rights, privileges or immunities secured by the United States Constitution or by Federal Law, to wit:

> A.  Herand Abcarian, M.D. was a "Covered Person" under the University of Illinois Liability Self- Insurance Plan, [the Plan] copy of which is attached hereto as Exhibit E.

> B.  Under Article IV of the Plan, the Board of Trustees of the University of Illinois had the duty to defend any suit seeking damages against Dr. Abcarian and an implied duty not to foment a fraudulent lawsuit.

> C.  Under Article IV of the Plan, a Covered Person has the right to refuse to consent to the settlement of a claim against him and he is still entitled to payment by the Plan of any liability judgment against him in the lesser amount of the amounts provided under Article IX or the amount the claim could have been settled for at the time of the  refusal of the Covered Person to consent to settlement; however in no event is the Plan permitted to evade the right of the Covered Person to consent or not to consent to settlement.

> D.  As an insurer, subject to the laws of the State of Illinois, the Plan had an obligation to provide independent counsel to Dr. Abcarian at the Plan's expense when there was a conflict of interest between the interest of the Plan and its insured.

> E.  A conflict of interest existed when the Plan determined to pay the claim brought on behalf of the Estate of John Behzad and refused to agree to Dr. Abcarian's attempt to vacate the dismissal order and contest the merits of the claim brought against him.

> F.  Although demand was made upon the Board of Trustees of the University of Illinois and the Plan to provide independent counsel, the Plan refused to do so.

Case 1:08-cv-03843    Document 1    Filed 07/07/2008    Page 40 of 47

G. Dr. Abcarian had the same right to equal protection under 42 U.S.C. 1981 to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.

H. Dr. Abcarian's rights under the Plan and under 42 U.S.C. 1981 were well known to The Board of Trustees of the University of Illinois inasmuch as the University operated and operates an academic program know as the Office of Risk Management Research which states as its goals:

> */Teaching/*
> Preparing and educating students to be informed consumers. Preparing and educating students for enterprise risk management careers. Preparing the next generation of industry leaders and RMI educators.

> */Research/*
> Developing the premier center for practical research in risk management and insurance.

> */Service/*
> Serving as an essential forum for the interaction between industry and education.

> */Student Access/*
> Enabling our corporate partners to access the best and the students in the College of Business.

I. Additionally, the University maintains a faculty of professors, including doctoral level qualified professors who teach insurance and insurance coverage issues at the undergraduate and graduate level at the University of Illinois, including in academic programs of finance, business and insurance law.

J. Upon information and belief, the Plan routinely defend lawsuits against other physicians who are staff members at UIMCC and in other medical programs conducted

40

Case 1:08-cv-0~~43    Document 1    Filed 07/07/2008    Page 41 of 47

by the University and accords such persons the right to refuse to consent to settlements of claims against them and further provides them independent counsel at the Plan's expense in the event of conflicts of interest.

144.  Clearly established principles of case law rendered such conduct as hereinabove described in failing to provide a defense to Dr. Abcarian and failing to seek his consent to settlement and failing to honor his right to refuse settlement and failing to provide him with independent counsel of his own selection when there was an irreconcilable conflict of interest between the Plan and its intent to settle a non-meritorious case and to dismiss his petition to reopen the case and his intent to reopen and contest the claim made against him unconstitutional and accordingly, Defendants' conduct in refusing to provide him a defense and exercise his rights to contest the merits of the claim against him as aforesaid was not objectively reasonable. Dr. Abcarian's rights were not vague and amorphous but rather of a fundamental nature and the contours of the rights were sufficiently clear that a reasonable person would understand that what they were doing violated Dr. Abcarian's rights.

145.  Acting under color of law, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois flagrantly, and with malice and actual malice, without cause and in bad faith, intentionally worked a denial of Dr. Abcarian's rights, privileges or immunities secured by the United States Constitution or by Federal Law as aforesaid.

WHEREFORE, Plaintiff Herand Abcarian, M.D., F.A.C.S., demands judgment against Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois for their violation of his rights under 42 U.S.C. 1981 jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000.00 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the

Case 1:08-cv-0   43    Document 1    Filed 07/07/200     Page 42 of 47

amount of $100,000.00 plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT VI

## EQUITABLE AND OTHER RELIEF FOR DR. ABCARIAN'S CONTINUING DAMAGES ARISING OUT OF DUE PROCESS AND EQUAL PROTECTION VIOLATIONS

146.    Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 103 above with the same force and effect as if set forth herein in full.

147.    Since Dr. Abcarian lacks an adequate remedy at law for the continuing refusal of Defendants to correct the records with the National Practitioner Data Bank and the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation, and since Defendants refuse to do so, he prays the court for an order requiring Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois to submit all appropriate and necessary documentation to the National Practitioner Data Bank and the Illinois Department of Financial and Professional  Regulation, Division of Professional Regulation needed to cause such agencies to remove the false  reports of the settlement of a medical negligence claim or lawsuit from their records with a complete explanation of the wrongdoing on the part of Defendants which caused the false reports to be filed together with an award of costs and expenses including legal expenses incurred by Dr. Abcarian in prosecuting the action in the Circuit Court of Cook County, Illinois to reopen the proceedings in the lawsuit styled as DAVID BEHZAD, as Special Administrator for the Estate of JOHN BEHZAD, deceased, Plaintiff, vs. HERAND ABCARIAN, M.D., Defendant, No. 06 L 006172 and his costs and expenses including legal fees in pursuing this action and an award of punitive damages for the breach by the University of Illinois Liability Self-Insurance Plan of its fiduciary duties to him.

Case 1:08-cv-0...43   Document 1   Filed 07/07/2008   Page 43 of 47

WHEREFORE, Herand Abcarian, M.D., F.A.C.S. demands judgment against Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois for their violation of his rights and the breaches of duty under the University of Illinois Liability Self-Insurance Plan jointly and severally, for declaratory relief as specified in paragraph 147 together with his actual, general, special, compensatory damages in the amount of $500,000.00 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000.00 plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT VII
### INTENTIONAL INFLICTION OF ACUTE MENTAL DISTRESS

148.  Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 103 above with the same force and effect as if set forth herein in full.

149.   The conduct of Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois as described hereinabove was and continues to be extreme and outrageous and malicious and in bad faith.

150.  The conduct of Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois as described hereinabove was and continues to be intended to inflict severe emotional distress or Defendants knew that there was at least a high probability that their conduct would inflict severe emotional distress.

151.   The conduct of Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq.,

Case 1:08-cv-0....3   Document 1   Filed 07/07/2008   Page 44 of 47

Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois as described hereinabove was and continues to proximately cause Dr. Abcarian severe emotional distress.

WHEREFORE, Plaintiff Herand Abcarian, M.D., F.A.C.S., demands judgment against Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois for their intentional infliction of severe mental distress jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000.00 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000.00 plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT VIII
## ABUSE OF PROCESS

152. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 103 above with the same force and effect as if set forth herein in full.

153. Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois had the ulterior purpose or motive of furtherance of the conspiracy to intentionally inflict severe emotional distress and other harm on Dr. Abcarian in connection with the filing of the lawsuit in the Circuit Court of Cook County, Illinois, County Department, Law Division, styled as DAVID BEHZAD, as Special Administrator for the Estate of JOHN BEHZAD, deceased, Plaintiff, vs. HERAND ABCARIAN, M.D., Defendant, No. 06 L 006172.

154. Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University

of Illinois acted on such ulterior purpose or motive in causing and requiring Kathleen Zellner to file the lawsuit in the Circuit Court of Cook County, Illinois, County Department, Law Division, styled as DAVID BEHZAD, as Special Administrator for the Estate of JOHN BEHZAD, deceased, Plaintiff, vs. HERAND ABCARIAN, M.D., Defendant, No. 06 L 006172, and in causing and requiring her to dismiss such lawsuit with prejudice so as to foreclose Dr. Abcarian's rights to Due Process and his right to a jury trial on the allegations of the meritless complaint filed against him.

155.  By means of such actions, Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois committed the tort of abuse of process and proximately caused harm to Dr. Abcarian as set forth hereinabove.

WHEREFORE, Plaintiff Herand Abcarian, M.D., F.A.C.S., demands judgment against Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois for their abuse of process jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000.00 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000.00 plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT IX
### LIBEL

156.  Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 103 above with the same force and effect as if set forth herein in full.

157.  On or about August 2, 2006, Defendant Christine Flaningam knowingly made false and untrue statements of material fact of and concerning Dr. Abcarian and his professional reputation

falsely claiming the there had been a "delay in diagnosis" and a "delay in performance" of a colonoscopy and a "settlement" in the amount of "$950,000.00" was made on behalf of Dr. Abcarian as a result thereof. Such statements were and are untrue and were and are libelous *per se*.

158. These statements were published to third parties.

159. On or about August 11, 2006, Defendant Patricia Kale knowingly made false and untrue statements of material fact of and concerning Dr. Abcarian and his professional reputation falsely claiming the there had been a "settlement or final judgment" made on behalf of or against Dr. Abcarian in the amount of "$950,000.00" and that the actions of Dr. Abcarian had "resulted in the death of the claimant." Such statements were and are untrue and were and are libelous *per se*.

160. These statements were made with actual malice and malice and were knowingly false and intentional made and made in bad faith for the express purpose of damaging Dr. Abcarian's reputation and causing him harm. No privilege can attach to such statement due to the fact that such false statements were made for the sole and exclusive purpose of harming the professional reputation of Dr. Abcarian.

161. Dr. Abcarian is a private person who has done nothing to inject himself in the public arena and accordingly, is not a public figure.

162. Defendants Timothy McDonald, M.D., William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Michael Trucco, Esq and The Board of Trustees of The University of Illinois acted in concert and conspired with Patricia Kale and Christine Flaningam in making the libelous statements or alternatively ratified such statements and adopted such libel as their own statements.

163. The libelous statements were lodged with public agencies with the intent and purpose that such statements be republished by such agencies so as to continue to damage the professional reputation of Dr. Abcarian.

Case 1:08-cv-0__43    Document 1    Filed 07/07/2008    Page 47 of 47

164.  At least one such republication of the false and untrue statements made by Patricia Kale has occurred in the State of Florida on or about March 20, 2008.

165.  By means of the premises and as a direct and proximate result thereof, Dr. Abcarian was harmed in his professional reputation, incurred acute mental distress and anguish and has been required to spend considerable sums in an effort to remove such statements from records of public agencies.

WHEREFORE, Plaintiff Herand Abcarian, M.D., F.A.C.S., demands judgment against Defendants Timothy McDonald, M.D., Patricia Kale, William H. Chamberlin, Jr., M.D., Nikki Centomani, Stuart Allen, Barbara McColgin, Chris J. Mollet, Esq., Thomas R. Bearrows, Esq., Christine Flaningam, Michael Trucco, Esq., and The Board of Trustees of The University of Illinois for their libelous statements of and concerning Plaintiff jointly and severally, for actual, general, special, compensatory damages in the amount of $500,000.00 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000.00 plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

Respectfully submitted,


S/ JOSEPH MICHAEL O'CALLAGHAN


Of counsel:

O'Callaghan & Colleagues, P.C.

208 West Washington Street

Suite 2301

Chicago, Illinois 60606

312.332.1600

ARDC No. 2083752

47

NOTICE

This text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

FIRST DIVISION
May 19, 2008

No. 1-07-1357

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DAVID BEHZAD, as Special Administrator for the Estate of JOHN BEHZAD, deceased, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | 06 L 6172 |
| HERAND ABCARIAN, M.D., | ) ) | Honorable Donald J. Suriano, |
| Defendant-Appellant. | ) ) | Judge Presiding. |

ORDER

In the underlying lawsuit, plaintiff David Behzad filed a
wrongful death action against defendant Herand Abcarian, M.D.
Defendant was employed by the University of Illinois (University)
at the University of Illinois Hospital in Chicago when he treated
Behzad's father, John Behzad.  The suit was settled by the Board
of Trustees of the University (Board).

Defendant appeals the trial court's order denying his
petition to vacate the order approving the settlement.  He also
appeals the court's order denying his petition for Rule 137
sanctions against the Board.  We affirm.



EXHIBIT
A

1-07-1357

FACTS

On July 8, 2005, plaintiff's counsel sent defendant a
letter informing him of a potential wrongful death lawsuit
against him.  The letter said that if counsel did not hear from
defendant's insurance company within 14 days, she would file suit
against the defendant in Cook County.  The record shows that on
July 11, 2005, defendant sent an email to William Chamberlin
asking him where to send the letter.  The copy of the letter in
the record is stamped "Received" on July 13, 2005, by "University
Counsel Claims Management, Chicago Campus."

As a University employee, defendant qualified as a "Covered
Person" under the University's Liability Self-Insurance Plan.
Under the policy, the University:

>"shall have the right and duty to defend any
>
>suit seeking such damages against the Covered
>
>Person, even if any or all of the allegations
>
>of the suit are groundless, false or
>
>fraudulent, and may make such investigation
>
>and such settlement of any claim or suit as
>
>it deems expedient***."

The policy also provides:

>"If the Covered Person shall refuse to
>
>consent to any settlement recommended by the

2

1-07-1357

> Vice President and shall elect to contest the
> claim or continue any legal proceedings in
> connection with such claim, then the Plan's
> liability for the claim shall not exceed the
> lesser of the limit of Article IX or the
> amount for which the claim could have been
> settled including costs, charges and expenses
> incurred up to date of such refusal."

On June 13, 2006, plaintiff filed a wrongful death action
against the defendant in the Circuit Court of Cook County.
Defendant was not served with process.  Neither the defendant nor
the Board filed an appearance in the case.  The University was
not named as a defendant.

The Board settled the claim for $950,000.  Plaintiff signed
a Release and Indemnity Agreement releasing the Board, its
employees, agents, students, and servants from any and all claims
and causes of action arising from injuries sustained on or about
June 7, 2003, through February 4, 2005.  Defendant was not named
in the release.  Plaintiff filed a petition in the trial court
for approval of the settlement.  On July 6, 2006, the trial court
entered an order approving the settlement, directing the Special
Administrator to distribute the proceeds, and dismissing the
cause with prejudice.

3

1-07-1357

Defendant filed a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)), seeking to vacate the July 6, 2006, order and to direct the estate to return the settlement funds.  He alleged the Board had no authority to settle the lawsuit.  He said he was unaware of the existence of the lawsuit while it was pending in the court.  The Board filed a petition to intervene and a petition to strike defendant's section 2-1401 petition.  Defendant filed a motion to dismiss the Board's petition to intervene.

On April 18, 2007, the trial court granted defendant's section 2-1401 petition to the extent it sought to vacate the dismissal order of July 6, 2006.  It denied defendant's request to vacate the court's approval of the settlement.  The plaintiff then voluntarily dismissed the reinstated action with prejudice.  The trial court never ruled on the Board's petition to intervene.

On May 7, 2007, defendant filed a petition for an award of fees as a sanction pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137).  The petition was directed at the Board and its counsel for filing the motion to intervene in the section 2-1401 proceeding.  The court denied the motion for sanctions on May 17, 2007.  Defendant appeals the April 18, 2007, and May 7, 2007, orders.

DECISION

4

1-07-1357

I. Order Approving Settlement

Defendant contends the court erred in refusing to vacate the July 6, 2006, order approving the settlement between the Board and the plaintiff.  He says the order is void ab initio for lack of personal jurisdiction because he was never served in the lawsuit.  Service of summons on a defendant is necessary to create personal jurisdiction of the court.  In the absence of proper service, any judgment entered against a defendant is void ab initio.  State Bank of Lake Zurich v. Thill, 135 Ill. App. 3d 747, 754 (1985).

The Board admits defendant was not served.  It contends the lack of service is irrelevant, however, because the order was entered pursuant to a settlement, not an adjudication on the merits.  The defendant was not a party to the settlement.  According to the Board, the court's approval of the settlement had no effect on defendant's rights.  We agree with the Board.  The order approving the settlement was not a judgment against the defendant requiring personal jurisdiction over him.  Service on the defendant was not necessary for the court to approve a settlement between the plaintiff and the Board.

Given that defendant was not a party to the settlement agreement, and the lawsuit against him was dismissed, he cannot now argue that the trial court lacked the authority to appoint a

1-07-1357

Special Administrator for purposes of filing suit. Nor were defendant's constitutional rights violated by the court's order approving settlement. The existence of defendant's meritorious defense against the underlying lawsuit is irrelevant.

Defendant's claim that the Board lacked the authority to settle the case without his consent was not a proper issue in the trial court and is not an issue in this appeal.

We also note defendant's statement of facts is argumentative, contains irrelevant and inappropriate facts, and does not convey a complete picture of the facts, in violation of Supreme Court Rule 341(h)(6) (210 Ill. 2d R. 341(h)(6)) (appellant's statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment"). Defendant does not acknowledge his receipt of the letter from plaintiff's counsel informing him of the upcoming wrongful death lawsuit or his transmittal of that letter to the University.

II. Petition for Fees Pursuant to Rule 137

Defendant contends the trial court erred in denying his petition for fees as a sanction against the Board for filing its petition to intervene. Supreme Court Rule 137 requires an attorney to certify he has read the pleading or motion, and, to the best of his knowledge, information, and belief formed after

6

1-07-1357

reasonable inquiry, it is well grounded in fact and warranted by

existing law.   155 Ill. 2d R. 137.   The purpose of the rule is to

restrict litigants who plead false or frivolous matters with no

basis in the law.   <u>Fremarek v. John Hancock Mutual Life Insurance</u>

<u>Co.</u>, 272 Ill. App. 3d 1067, 1074 (1995).   The trial court has

discretion whether to grant or deny sanctions under Rule 137, and

we will not disturb the decision absent an abuse of discretion.

<u>Fremarek</u>, 272 Ill. App. 3d at 1074.

Defendant says the Board's petition had no basis in law

because the court lacked subject matter jurisdiction.   He relies

on sovereign immunity statutes providing that the State is immune

from suit in any court (745 ILCS 5/1 (West 2006) (State Lawsuit

Immunity Act)), and the Court of Claims has exclusive

jurisdiction over cases against the Board (705 ILCS 505/8(d)

(West 2004) (Court of Claims Act)).   He also contends the Board

is collaterally estopped and judicially estopped from intervening

based on prior court decisions dismissing the Board as a

defendant.

The Board sought leave to intervene in the section 2-1401

proceeding pursuant to sections 2-408(a)(2) and 2-408(b)(2) of

the Code of Civil Procedure.   Section 2-408(a)(2) provides anyone

shall be permitted to intervene as of right "when the

representation of the applicant's interest by existing parties is

7

1-07-1357

or may be inadequate and the applicant will or may be bound by an order or judgment in the action." 735 ILCS 5/2-408(a)(2) (West 2006). Section 2-408(b)(2) allows anyone in the discretion of the court to intervene where "an applicant's claim or defense and the main action have a question of law or fact in common." 735 ILCS 5/2-408(b)(2) (West 2006).

Defendant confuses the underlying lawsuit with the section 2-1401 proceeding, in which the Board sought to intervene. A section 2-1401 petition, though filed in the same proceeding, commences a new cause of action. It is not a continuation of the proceeding in which the original judgment was entered. Browning, Ektelon Division v. Williams, 348 Ill. App. 3d 830, 833 (2004). The section 2-1401 proceeding was not an action against the State governed by the sovereign immunity statutes. See People v. Wilcoxen, 358 Ill. App. 3d 1076, 1078 (2005) (sovereign immunity applies only where a party makes the State a party, not when the State chooses to become a party by initiating proceedings). Collateral and judicial estoppel do not apply because the cases cited by the defendant involved the State being dismissed as a defendant.

The Board had a right to protect its interests in the section 2-1401 proceeding. The defendant's petition was directed at the settlement between the plaintiff and the Board. It was

8

1-07-1357

the Board's money at stake in the settlement.  At the least, the Board's motion to intervene was grounded in fact and law and was not frivolous.  We hold the trial court properly refused to award fees to the defendant as a sanction against the Board.

We see no need to address defendant's remaining argument that this court should award sanctions pursuant to Supreme Court Rule 366(a)(5).

We affirm the trial court's orders.

Affirmed.

Wolfson, J., with Garcia, and R. Gordon, JJ., concurring.