# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| HERAND ABCARIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 3843 |
| | ) | |
| TIMOTHY MCDONALD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, we grant Defendants' motion to dismiss and dismiss the remaining state claims without prejudice.

## BACKGROUND

Plaintiff Herand Abcarian, M.D. ("Abcarian") alleges that he was employed as a physician by the University of Illinois at the University of Illinois Medical Center at Chicago ("UIMCC") in Chicago. Abcarian allegedly treated John Behzad, who later died. David Behzad ("Behzad"), the son of John Behzad, allegedly retained Kathleen T. Zellner ("Zellner") as counsel and allegedly contemplated bringing a

1

wrongful death action in Illinois state court against Abcarian for the death of Behzad's father. In July 2005, Abcarian allegedly received a letter form Zellner indicating that Behzad was contemplating a wrongful death suit ("Behzad Claim"). Abcarian contends that he forwarded the letter to Defendant William Chamberlin, Jr., M.D. ("Chamberlin"), Chief Medical Officer at UIMCC, who then forwarded the letter to, Defendant Nikki Centomani ("Centomani"), Director of Safety and Risk Management at UIMCC. Abcarian contends that Defendants then conspired to settle the Behzad Claim without the consent of Abcarian. Defendants allegedly conspired against Abcarian because he had previously spoken out against Patricia Kale ("Kale"), Timothy McDonald, M.D., J.D. ("McDonald"), and Chamberlin in regard to rising premiums for professional liability insurance, risk management and safety issues, faculty recruitment, compensation, and fringe benefits. Abcarian contends that Defendants also conspired to settle the Behzad Claim so that they could damage his reputation by reporting the settlement to the Illinois Department of Financial and Professional Regulation, Division of Professional Regulation ("IDFPR") and the National Practitioners Data Bank ("NPDB"), the organizations responsible for collecting information on malpractice suits and settlements.

Defendant Board of Trustees of the University of Illinois ("Board") allegedly agreed to settle the Behzad Claim for $950,000 and on June 13, 2006, a Release and

Indemnity Agreement ("Settlement Agreement") was allegedly executed without Abcarian's knowledge. Abcarian alleges that he never consented to the settlement and therefore was not a party to the settlement. On the same day the Settlement Agreement was signed, Abcarian claims that either Defendant Stuart Allen ("Allen"), or Defendant Barbara McColgin ("McColgin") directed Zellner to file a wrongful death suit against Abcarian as a condition of approval of the settlement, and directed Zellner not to serve Abcarian with notice of the action or settlement.

Behzad allegedly then brought a wrongful death action in Illinois state court ("State Action") against Abcarian and on July 6, 2006, the state court allegedly issued an order approving the settlement and dismissing the case with prejudice. Abcarian alleges the State Action was urged by the Defendants to preclude his right to be heard on the merits of the case and to obtain an adverse judgment against him that could be reported to the IDFPR and the NPDB. Abcarian also alleges Christine Flaningam ("Flaningam") subsequently reported the Behzad Claim to the NPDB and IDFPR in order to discredit Abcarian. Abcarian contends that after receiving letters from NPDB and IDFPR, he retained counsel and discovered the State Action.

Abcarian contends that he filed a petition in the State Action to vacate the orders dismissing the case and approving the settlement, and the state court vacated the dismissal of the State Action. However, Zellner allegedly immediately moved to

voluntarily dismiss the case and the state court granted the motion, dismissing the case again. Abcarian also contends that he has asked Defendants to report to NPDB and IDFPR that there was no settlement made against him and that the Behzad Claim was dismissed with prejudice, but Defendants refused to do so.

Abcarian brought the instant action, and includes in his amended complaint claims brought pursuant to 42 U.S.C. § 1983 ("Section 1983") for alleged violations of his First Amendment rights (Counts I and IV), Section 1983 due process claims (Count II), Section 1983 substantive due process claims (Count III), Section 1983 deprivation of right to trial by jury claims (Count V), Section 1983 equal protection claims (Count VI), claims seeking equitable and other relief for continuing damages (Count VII), breach of fiduciary duty claims (Count VIII), intentional of infliction of emotional distress ("IIED") claims (Count IX), abuse of process claims (Count X), and libel claims (Count XI). Defendants move to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l*

*Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "'provide the defendant with at least minimal notice of the claim,'" *Kyle*, 144 F.3d at 455 (quoting *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)), and

the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

I. Claims Brought Against the Board

Defendants argue that the claims brought against the Board are barred by the Eleventh Amendment.

A.  Board's Eleventh Amendment Protection

Defendants contend that the Board, as an arm of the state, is protected by the Eleventh Amendment from suit. Under the Eleventh Amendment, "states, as sovereigns in our federal system, will not be held amenable to suit in federal court without their consent." *Protestant Memorial Medical Center, Inc. v. Maram*, 471 F.3d 724, 728 n.3 (7th Cir. 2006). The Eleventh Amendment bar has also been held

to extend to "an entity in addition to the state itself, when the defendant is an 'arm' or 'alter ego' of the state." *Thiel v. State Bar of Wis.*, 94 F.3d 399, 400-01 (7th Cir. 1996)(quoting in part *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  The Board is deemed to be an arm of the state of Illinois for purposes of the Eleventh Amendment. *Goshtasby v. Bd. of Trs. of Univ. of Ill.*, 123 F.3d 427, 427 (7th Cir. 1997); *see also Joseph v. Board of Regents of University of Wisconsin System*, 432 F.3d 746, 748 (7th Cir. 2005)(stating that the defendant board of regents "is an arm of the state for Eleventh Amendment purposes")(internal quotations omitted).  Thus, the Board is entitled to Eleventh Amendment protection and cannot be sued in federal court.

## B.  Exceptions to Eleventh Amendment

Abcarian argues that the Board can be sued in federal court in accordance with the exceptions to the Eleventh Amendment immunity.  There are three exceptions to a state's Eleventh Amendment immunity: (1) "a state may waive immunity by consenting to suit in federal court," (2) "Congress may abrogate the state's immunity through a valid exercise of its powers," or (3) "under the *Ex parte Young* doctrine, a plaintiff may file 'suit[ ] against state officials seeking prospective equitable relief for ongoing violations of federal law . . . .'"  *Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept.*, 510 F.3d 681, 695 (7th Cir. 2007)(quoting in

part *Marie O. v. Edgar,* 131 F.3d 610, 615 (7th Cir. 1997)).

The second exception to Eleventh Amendment immunity is not applicable in the instant action since Congress has not abrogated the states' immunity for claims under Section 1983. *See Joseph*, 432 F.3d at 748 (indicating that "[t]he Supreme Court has expressly held that Congress has not abrogated the states' immunity in § 1983 suits"); *Kroll v. Board of Trustees of University of Illinois*, 934 F.2d 904, 909 (7th Cir. 1991)(stating that "[t]he Supreme Court, however, long ago dispelled the notion that section 1983 abrogated the states' eleventh amendment immunity, and suits filed under that statute must still pay heed to the eleventh amendment").

The third exception to Eleventh Amendment immunity is not applicable in the instant action since the *Ex Parte Young* doctrine permits suits against state officials for prospective relief, not states or their agencies, such as the Board. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)(stating that the *Ex parte Young* "exception is narrow" and "has no application in suits against the States and their agencies, which are barred regardless of the relief sought"); *Peirick*, 510 F.3d at 695; *MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323, 337 (7th Cir. 2000)(stating that the "*Ex parte Young* doctrine allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law").

Abcarian argues that the first exception to Eleventh Amendment immunity is applicable in the instant action since the Board has waived its Eleventh Amendment immunity. A court should "'indulge every reasonable presumption against' a state's waiver of its immunity. . . ." *MCI Telecommunications Corp.*, 222 F.3d at 338 (quoting in part *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999))(stating that "the test 'for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one'"). A state is deemed to have waived its Eleventh Amendment immunity "when 'the State voluntarily invokes' federal jurisdiction or when 'the State makes a clear declaration' that it intends to submit itself to federal jurisdiction.'" *Id.* (quoting in part *College Savings Bank*, 527 U.S. at 675-76)(stating that "[i]n either case, there must be an 'unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment'").

Abcarian contends that the Board waived its immunity due to the fact that its regulations provide that the University of Illinois ("University") will not engage in discrimination and "will comply with all federal and state nondiscrimination, equal opportunity and affirmative action laws, orders and regulations." (A. Compl. Par. 20). However, the mere assertion that the University will not violate federal laws does not mean that the University is consenting to suit in federal court.

Abcarian also contends that a representative of the Board, spoke at one of the hearings in the State Action and the representative acknowledged its obligations under state and federal law and stated that if Abcarian "has a dispute with his employer over the manner in which they settled the claim or the manner in which they reported it, he has avenues and he has forums available to him to challenge us and to sue us or to bring a claim against" the Board. (A. Compl. Par. 107). Abcarian contends that the representative's reference to "avenues" and "forums" meant litigation in State Court. However, vague references to "avenues" and "forums" are far from the clear and unequivocal waiver that must be provided by a state. *MCI Telecommunications Corp.*, 222 F.3d at 338. Defendants also contend that the reference by the Board representative to avenues and forums for Abcarian's claims, which include state tort claims such as Illinois IIED claims, was a reference to the Illinois Court of Claims, which has exclusive jurisdiction to hear "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit. . . ." 705 ILCS 505/8(d). Thus, based on the above, Abcarian has not shown that any of the exceptions to the Board's Eleventh Amendment immunity are applicable in this case.

C.  Judicial Estoppel Barring Eleventh Amendment Protection

Abcarian also argues that the Board is judicially estopped from asserting its

Eleventh Amendment sovereign immunity. Under the doctrine of judicial estoppel, if a "'party *prevails* on one legal or factual ground in a lawsuit, that party cannot later repudiate that ground in subsequent litigation based on the underlying facts.'" *Pakovich v. Broadspire Services, Inc.*, 535 F.3d 601, 606 (7th Cir. 2008)(quoting *Urbania v. Cent. States, Se. & Sw. Areas Pension Fund*, 421 F.3d 580, 589 (7th Cir. 2005))(emphasis in original). Abcarian argues that in the State Action, after he joined the action, he "asserted that the Board was barred by the doctrine of sovereign immunity from intervening in the Petition which . . . Abcarian brought to vacate the dismissal and settlement order." (Ans. 5). Abcarian argues that the Board asserted in the State Action that it was not barred by sovereign immunity from intervening in the State Action. Abcarian thus contends that the Board is barred from maintaining an inconsistent position in the instant action. However, Defendants correctly point out that the issue in the State Action was whether the doctrine of sovereign immunity barred the Board from intervening in a state court proceedings. Such an issue is entirely distinct from the issue of whether a suit against the Board in federal court is precluded by the Eleventh Amendment. The State Action proceedings involve separate issues and, in fact, the Seventh Circuit has specifically acknowledged that "[a] state may waive its immunity to suit in its own courts without authorizing suit in federal court." *NBD Bank, N.A. v. Bennett*, 67

F.3d 629, 634 (7th Cir. 1995)(citing *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990)). Thus, the Board is not barred under the doctrine of judicial estoppel from asserting its Eleventh Amendment immunity. Therefore, based on the above, we grant Defendants' motion to dismiss the claims brought against the Board.

## II.  First Amendment Retaliation Claims (Count I)

Defendants argue that the First Amendment retaliation claims should be dismissed since the allegations in the amended complaint show that Abcarian did not speak out as a citizen concerned about matters of public concern. For a First Amendment retaliation claim, a plaintiff must establish: "'(1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor in the employer's action.'" *Nagle v. Village of Calumet Park*, 2009 WL 249974, at *12 (7th Cir. 2009)(quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). A public employee's speech is constitutionally protected if "(1) the employee spoke as a citizen on matters of public concern, and (2) the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees."

*Sigsworth v. City of Aurora,* 487 F.3d 506, 509 (7th Cir. 2007).

In the instant action, Abcarian alleges that he was a public employee at the time in question. (A. Compl. Par. 3). Abcarian alleges that during his employment, he held certain supervisory and administrative positions, including serving as the President of the Executive Committee of the Medical staff at the UIMCC, the Service Chief of the Department of Surgery at the UIMCC, and the Head of the Department of Surgery. (A. Compl. Par. 3). Defendants contend that, to the extent that Abcarian alleges that he spoke out on issues, such speech was within his official duties.

Abcarian contends that he spoke out on matters concerning: (1) physician discipline, (2) premiums for professional liability coverage for members of the medical staff, (3) faculty compensation and fringe benefits, (4) managerial decisions concerning the allocation of costs to administrative expenses, and (5) faculty recruitment. (A. Compl. Par. 25, 26, 121). Abcarian contends that he was speaking out on matters of public concern and such speech is protected by the First Amendment. However, all of the above statements fall within the scope of Abcarian's concerns as a physician and his supervisory and executive positions. Abcarian has not presented facts that show that such speech was anything other than the speech that "was part of the tasks he was employed to perform" and thus since

"he spoke not as a citizen but as a public employee, . . . that speech is not entitled to protection by the First Amendment." *Sigsworth*, 487 F.3d at 511.

Abcarian also alleges he has had confrontations with Chamberlin over faculty recruitment, compensation, and fringe benefits. These claims are clearly within the scope and duties of a physician, such as Abcarian, with official titles of President of the Executive Committee of the Medical staff at the UIMCC, Service Chief of the Department of Surgery at the UIMCC, and Head of the Department of Surgery, and the Chief Medical Officer at UIMCC, such as Chamberlin, as they pertain to human resource issues. In addition, Abcarian contends that Chamberlin "gives his attention to administrative matters" and is "responsible for ultimate resolution of all complaints brought against members of the medical staff." (A. Compl. Par. 7). Thus, is it apparent from the facts alleged by Abcarian that when he was discussing matters with Chamberlin, Abcarian was speaking as part of his official duties.

Abcarian also asserts that he spoke out regarding "Risk Management and patients' Safety issues." (A Compl. Par. 121). Such a statement on its surface suggests that Abcarian was concerned about patient safety, which could be a matter of public concern to private citizens. However, when viewing the statement in the context of the other facts included in the amended complaint, it is apparent that such speech was made by Abcarian in his professional capacity. Abcarian contends that

there was "personal animosity" between himself and McDonald. (A Compl. Par. 24). Abcarian contends that he was involved with the Operating Room Committee, a committee of the medical staff to UIMCC responsible for the conduct of the operating room. (A. Compl. Par. 24). Abcarian contends that he had disagreements with McDonald about the conduct in the operating room and Abcarian was "instrumental in seeking to have [McDonald] removed from the Operating Room Committee. . . ." (A. Compl. Par. 24). It is in this context that Abcarian allegedly spoke out about "Risk Management and Safety issues." (A. Compl. Par. 25). Abcarian alleges that the speech was tied to his dispute with McDonald and the Operating Room Committee and included issues such as whether "operating room privileges should be suspended for physicians who are impaired by their abuse of prescription drugs." (A. Compl. Par. 25). Thus, the speech concerning the Risk Management and Safety issues, was tied to Abcarian's dispute with McDonald over decisions concerning operating room management, which was controlled by the staff committee for which Abcarian was acting. Thus, in regard to the "Risk Management and Safety" speech, Abcarian has not shown other than that his speech "was part of the tasks he was employed to perform. . . ." *Sigsworth*, 487 F.3d at 511. Abcarian's own allegations indicate that, in speaking, "he was merely doing what was expected of him" in his professional roles. *Id.* Also, to the extent that Abcarian in making any

speech was acting beyond his "'core' job functions," such speech would not be protected if he was speaking "'pursuant to official responsibilities.'" *Spiegla v. Hull*, 481 F.3d 961, 966 (7th Cir. 2007)(quoting in part *Garcetti v. Ceballos*, 547 U.S. 410, 433 (2006)).  Thus, based on the above, Abcarian has not presented facts that plausibly suggest that he was speaking out as a citizen on matters of public concern and we grant Defendants' motion to dismiss the First Amendment retaliation claims (Count I).

## II.  Procedural Due Process Claims (Counts II and IV)

Defendants move to dismiss the procedural due process claims.  For a Section 1983 procedural due process claim, a plaintiff "must show that [the plaintiff was] deprived of a constitutionally protected interest in life, liberty or property," and "[i]f the plaintiff[] can establish such a loss, [the court] then must determine what process was due regarding that loss." *Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007). Abcarian contends that he was deprived of notice and an opportunity to be heard in the State Action, and that he was deprived of his liberty interest in his good name and reputation and his property interest in his unrestricted and unquestioned status regarding his license to practice medicine.  (A. Compl. Par. 32, 35, 130, 139).

A.  Protectable Interest

Defendants argue that Abcarian does not have a protected interest in his reputation.  An individual "does not have a protectable liberty or property interest in h[is] reputation. . . ."  *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002).  However, a protectable interest has been recognized in "'the liberty to follow a trade, profession, or other calling.'"  *Draghi v. County of Cook*, 184 F.3d 689, 693 (7th Cir. 1999)(quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992)).  In addition, the Seventh Circuit has recognized a protectable "interest in a blemish-free license to practice medicine. . . ."  *Fleury v. Clayton*, 847 F.2d 1229, 1232 (7th Cir. 1988).  Abcarian claims in his amended complaint that the report of the settlement in the State Action would be a blemish on his license to practice medicine and would "call[] his license to practice medicine into question."  (A. Compl. Par. 135, 139).  For the purposes of the instant motion we must accept such allegations as true.  Therefore, we conclude that Abcarian has alleged a protectable interest.


B.  Denial of Due Process

Defendants also argue that even if Abcarian has shown a protectable interest, he was not denied any due process.  We agree.  Abcarian contends that he was not informed about the settlement and the State Action and was not accorded due process

before they were concluded. However, Abcarian acknowledges that the court in the State Action vacated the first dismissal and reinstated the case and Abcarian's counsel was able to participate in the case. (A. Compl. Par. 105). Behzad, as the plaintiff, exercised his right to voluntarily dismiss the case, which he did. (A. Compl. Par. 105). Abcarian appears to be dissatisfied with the outcome in the case, but he had his day in court. Thus, Abcarian was accorded due process in the State Action. To the extent that he still has issues with UIMCC regarding the reporting of the settlement and amending those reports, that was not a part of the proceedings in the State Action and is not a part of the due process issues in this case. Therefore, we grant Defendants' motion to dismiss the procedural due process claims (Count II and IV).

III.  Substantive Due Process Claims (Count III)

Defendants move to dismiss the substantive due process claims. Abcarian alleges that Defendants engaged in retaliatory acts that deprived him of his fundamental substantive due process rights to "bodily integrity." (A. Compl. Par. 134). Abcarian alleges that he has a right to be free from intentional infliction of acute emotional distress caused by the false reporting of the settlement of the medical negligence case to state regulators. (A. Compl. Par. 134). Abcarian further alleges

that the false accusations of medical malpractice were a "state-created danger" that imposed a duty on the state to protect Abcarian from harm. (A. Compl. Par. 135). Abcarian contends that this state-created danger had the effect of making him vulnerable to acute emotional distress, damaged his professional reputation causing him economic damages, and called his license to practice medicine into question. (A. Compl. Par. 135). As Defendants point out, no court has recognized a bodily integrity Section 1983 substantive due process claim based on emotional distress alone. Abcarian has also failed to cite any such precedent to support such a conclusion. *See, e.g., Brainerd v. Potratz*, 421 F. Supp. 836, 840 (N.D. Ill. 1976)(indicating that the tort of intentional infliction of emotional distress is not a recognized basis to support a 1983 claim). We agree with Defendants that claims based on the deprivation of the right to bodily integrity are limited and involve allegations of outrageous physical conduct.

Abcarian also contends that the false accusations contained in the medical malpractice settlement were a state-created danger that imposed a duty on the state to protect Abcarian from harm. (A. Compl. Par. 135). The due process protection of individuals "generally does not impose upon the state a duty to protect individuals from harm by private actors." *King v. East St. Louis School Dist., 189*, 496 F.3d 812, 818 (7th Cir. 2007). The state-created danger doctrine is an exception to that general

rule.  *Id.*  Under the state-created danger doctrine the "Due Process Clause imposes upon the state a duty to protect individuals against dangers the state itself creates . . . ."  *Id.*

Abcarian alleges that state actors created danger to his emotional state when they made false reports that a medical malpractice case had been settled against him. This state-created danger allegedly had the effect of making him vulnerable to acute emotional distress, damaged his professional reputation causing him economic damages and called his license to practice medicine into question.  (A. Compl. Par. 135).  However, Abcarian does not allege that the danger and harm were caused by a private actor.  Thus, the doctrine of state-created danger is not applicable in this case. *See King*, 496 F.3d at 818 (stating that the state-created danger exception was an exception to the general rule that the "Due Process Clause of the Fourteenth Amendment generally does not impose upon the state a duty to protect individuals *from harm by private actors*")(emphasis added); *Witkowski v. Milwaukee County*, 480 F.3d 511, 513 (7th Cir. 2007)(referring to the "privately created danger").  In addition, even if the doctrine was applicable, Abcarian was not subjected to the level of danger generally associated with the state-created danger exception.  *See e.g. King*, 496 F.3d at 818 (stating that "because the right to protection against state-created dangers is derived from the substantive component of the Due Process

Clause, the state's failure to protect the individual must shock the conscience");

*Monfiles*, 165 F.3d at 518 (involving heightened danger that resulted in a death);

*Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993)(involving a danger that

resulted in a drunk driver causing an accident). Therefore, we grant Defendants'

motion to dismiss the substantive due process claims (Count III).


IV. Right to Jury Trial Claims (Count V)

Defendants move to dismiss the right to a jury trial claims. Abcarian asserts

that he had a right to a trial by jury pursuant to the Seventh Amendment which was

violated when Defendants concealed the existence of the medical malpractice action

in state court and settled the claim without his knowledge. (A. Compl. Par. 143).

First, Abcarian concedes in his own facts that, after he was allowed to enter the State

Action with his counsel, the plaintiff in the case voluntarily dismissed the action. (A.

Compl. Par. 105). Abcarian has not presented any authority providing a defendant

with a right to a jury trial in a case when the plaintiff no longer wishes to pursue the

case. Also, as Defendants point out, "[t]he Seventh Amendment . . . does not apply

in state courts." *Wartman v. Branch 7, Civil Division, County Court, Milwaukee*

*County, State of Wis.*, 510 F.2d 130, 134 (7th Cir. 1975). Abcarian also concedes in

his response to the instant motion that "there seems to be no case which holds that

the Seventh Amendment right to a trial by jury is binding upon the states by virtue of the Fourteenth Amendment . . . ." (Ans. 13). Abcarian has not presented facts that could support his denial of a right to jury trial and therefore, we grant Defendants' motion to dismiss claims relating to the right to a jury trial (Count V).

## VI. Equal Protection Claims (Count VI)

Defendants move to dismiss the equal protection claims. Abcarian clarifies in his response to the instant motion that he intends to pursue class-of-one equal protection claims. (Ans. 14). However, the United States Supreme Court has recently held that although the Equal Protection Clause still applies to public employers, the "class-of-one theory of equal protection has no application in the public employment context. . . ." *Engquist v. Oregon Dept. of Agr.*, 128 S.Ct. 2146, 2155-56 (2008). Abcarian alleges in his amended complaint facts that indicate his claim occurred in a public employment context. Therefore, we grant Defendants' motion to dismiss the equal protection claims (Count VI). In, addition, since we have granted Defendants' motion to dismiss as to all federal Section 1983 claims, we grant Defendants' motion to dismiss the claims for equitable relief that are based on the federal Section 1983 claims in Count VII.

## VII.  Remaining State Claims

Having resolved the federal claims in this case, we must determine whether to continue to exercise supplemental jurisdiction over the remaining state claims.  Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts).  The Seventh Circuit has stated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction" and that a court may retain jurisdiction where a statute of limitations would bar future suits, where "substantial federal judicial resources have already been expended on the resolution of the supplemental claims," and  "where it is obvious how the claims should be decided."  *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007).  The Seventh Circuit has stated that, In exercising that discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994).  We have considered all of the pertinent factors and, as a matter of discretion, we decline to exercise supplemental jurisdiction over the remaining state law claims.  Therefore, we dismiss all remaining state claims without prejudice.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss in its entirety. We also decline to exercise supplemental jurisdiction over the remaining state claims and we dismiss the remaining state claims without prejudice.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:  March 9, 2009